## WILLIAM FORE *v.* ROALIN WILLIAMS.

1. LAND LAWS: ACT OF CONGRESS OF 28TH SEPTEMBER, 1850, DONATING SWAMP AND OVERFLOWED LANDS, CONSTRUED.—The issuance of the patent to the State, as provided for by the second section of the Act of Congress of the 28th September, 1850, donating swamp and overflowed lands to this and other States, is not necessary to the vesting in the State of the legal title to the lands thereby granted. The first section of that act, grants at the date of its passage, to the State, all the swamp and overflowed lands lying within its limits, and the legal title to the same vests then in the State, as fully as if the lands were specifically designated in the act. *Rutherford* v. *Green*, 2 Wheat. 196.

2. GRANT: REPUGNANT PROVISIONS: CONSTRUCTION OF STATUTES.—Where two clauses of a grant are repugnant, the former will prevail : and this rule is applicable to a statute making a grant of property.

3. LAND LAWS: ACT 28TH SEPTEMBER, 1850: CONFIRMATION OF LANDS TO THE STATE.—The object of that provision of the Act of Congress of the 28th September, 1850, granting swamp and overflowed lands to this State, which directs, as the mode of ascertaining the lands thereby granted, that the secretary of the interior shall make out an accurate list and plat of the lands embraced in the act, and transmit it to the governor of the State, was simply, that the ascertainment and location of the lands, should be made by the authority and with the approval of the secretary ; and hence, the confirmation by the secretary of the interior, of a list of such lands, made by a commissioner appointed by the governor, is a substantial compliance with the act, and a sufficient designation of the lands embraced in it.

4. EVIDENCE: RECORD FROM LAND OFFICE.—A list of the swamp and overflowed lands located in this State, under the Act of Congress of the 28th September, 1850, approved and confirmed by the secretary of the interior, and transmitted by him to the register of the United States land office, for the district in which the lands are situated, is a record, and a copy thereof duly certified by the register, is admissible in evidence under the provisions of the Act of June 29th, 1822. Hutch. Dig. Art. 3, p. 864.

5. NEW TRIAL: WHEN NOT GRANTED FOR IMPROPER ADMISSION OF EVIDENCE.— The improper admission of evidence, to establish a fact otherwise sufficiently proven, is no ground for awarding a new trial.

6. SAME: WHEN NOT GRANTED FOR IMPROPER INSTRUCTIONS.—A new trial will
   not be granted, because the court in the instructions given to the jury, left to
   their determination, a question of law arising upon the construction of a written
   instrument, if it appear by the verdict that the jury decided correctly.

ERROR to the Circuit Court of Newton county.    Hon. John
Watts, judge.

A full statement of the case will be found in the opinion of the
court.

*George L. Potter*, for plaintiff in error.
*James Watts*, on same side.

*T. J.* and *F. A. R. Wharton*, for defendant in error.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendant in error, to recover
possession of a tract of land from the plaintiff in error. The defen-
dant below denied title generally, in the plaintiff, and on the trial
a verdict was rendered for the plaintiff. The defendant moved for
a new trial, which was overruled, and exceptions taken thereto,
upon which the case is brought here. Several questions were also
reserved upon the rulings of the court on the trial, and were relied
on as grounds for a new trial. And the case depends, upon the
correctness of the action of the court in refusing the motion for a
new trial, for the reasons stated in support of it.

It appears that the plaintiff claimed title under a patent issued
to him, from the State of Mississippi, and signed by the governor,
reciting that he was the holder of certain land-warrants, issued
under the sixteenth section of the Act of 2d March, 1854, and
which he had located on the land in controversy, and granting the
land to the plaintiff. This patent bore date 20th March, 1855, and
it was the first piece of evidence offered by the plaintiff. The de-
fendant objected to its admission, but it was permitted to be read,
the defendant reserving his exception.

He next offered in evidence, a transcript from the United States
land office, at Augusta, in this State, of a list of swamp and over-
flowed lands unfit for cultivation, selected by Henry C. Daniel, as

enuring to the State of Mississippi, under the Act of Congress of September 28th, 1850, entitled, An Act to enable the State of Arkansas, and other States, to reclaim the swamp lands within their limits, lying in the counties of Harrison, . . . Newton, &c., within the district of lands subject to sale at Augusta, Mississippi. This list embraced the land in controversy, and to it was attached the certificate of the register of the land office, that he had compared the list furnished, with the maps and tract books of his office, and that the lands embraced in it were vacant, except such as had been entered since 28th September, 1850, and that, from the indications upon the maps, and such other means as his office afforded for determining the facts, the lands appeared to be swamp and overflowed lands. Annexed to the list is a confirmation, signed by the governor of this State, of the location of swamp and overflowed lands made by Henry C. Daniel ; also a certificate of the register of the land office, that the preceding documents are a true copy of the original papers on file in his office ; also an indorsement upon the documents by the secretary of the interior, stating that the sections of land embraced in the foregoing list were approved by him, subject to any valid legal right that might exist thereto, bearing date 31st January, 1855, and signed by the secretary, and also attested by the commissioner of the General Land Office, as a copy from that office ; and finally, the whole is certified by the register of the land office at Augusta, to be a true and correct transcript of the approved list of the swamp and overflowed lands on file in his office, so far as it relates to the lands in controversy.

To the admission of this evidence the defendant objected, but it was permitted to be read, the defendant reserving his exception.

The plaintiff next offered in evidence, a certificate of the secretary of state under the great seal, stating that a copy from the book of entry of swamp lands thereto appended, was a true and correct list of the swamp and overflowed lands in Newton county, confirmed to the State, as it appeared by the original in his office ; which was objected to by the defendant, but was allowed to be read in evidence, the defendant reserving his exception.

The defendant then read in evidence, the receipt of the register of the land office at Augusta, for the money paid by the defendant

for the entry of the land at that office, dated 3d November, 1854. And this was all the evidence on his part.

The plaintiff then offered evidence to show, that he had purchased the interest of another person in the land, and had possession of a part of it, and cultivated it before the defendant's entry at the land office. And this was all the evidence.

The first objection made in behalf of the plaintiff, goes to the sufficiency of the evidence offered by the plaintiff to show title in him; and it is insisted, that it was necessary to show that a patent had issued from the United States to the State of Mississippi, in order to render the patent from the State offered in evidence by the plaintiff, evidence of the legal title in him. The correctness of this position, depends upon the force and effect of the Act of Congress of 28th September, 1850, granting certain swamp and overflowed lands to the States in which they are situate. Acts First Sess. 31st Cong. ch. 84.

The first section of the act, is that " to enable the State to construct the necessary levees and drains, to reclaim the swamp and overflowed lands therein,—the whole of those swamp and overflowed lands therein—made unfit thereby for cultivation, which shall remain unsold at the passage of the act, shall be, and the same are hereby, granted to said State."

The second section provides, "that it shall be the duty of the secretary of the interior, so soon as may be practicable after the passage of this act, to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the governor, and, at the request of said governor, cause a patent to be issued to the State therefor; and on that patent, the fee-simple to said lands shall vest in said State, subject to the disposal of the legislature thereof," &c.

It is now contended that, by force of the words in the second section, that the secretary of the interior shall "cause a patent to be issued to the State, and *on that patent, that the fee-simple to said lands shall vest in the State,*" the legal title remained in the United States, until the patent was issued, because that is the mode prescribed for conveying the title.

At first view, there is much force in this position; but it is obviated, when we consider the force and effect of the provisions of

the first section. It is there declared, that all of the lands referred to, "which shall *remain unsold at the passage of that act*, shall be, and the same *are hereby*, *granted* to the State." There cannot be a doubt that this was a legislative grant, vesting the absolute title in this State, to all the lands referred to, as fully and completely *as if the* act had designated the lands by specific description. The grant is explicit and absolute, taking effect upon all the lands referred to, from the date of its passage; for it provides, that all the lands *then* remaining unsold, *are* granted to the State by the act itself. If nothing further had been said, there would then be no doubt upon the subject. What, then, was necessary, in order to enjoy the benefit of the grant? Nothing but to locate the lands as swamp and overflowed lands, and thereby render the subject of the grant certain. *Rutherford* v. *Green*, 2 Wheat. 196. And that was done by the second section of the act. That could have been the only object of that section, which provides the mode in which the lands should be ascertained,—to render that certain which, under the first section, was uncertain, as to location and appropriation.

The provision in the second section, that after the ascertainment of the lands embraced by the act, a patent should issue for them to the State, at the request of the governor, "and on that patent, that the fee-simple in said lands shall vest in the State," cannot impair the title previously granted absolutely to the State, by the first section of the act. For, according to technical rule, when there are two clauses in a grant, repugnant to each other, the former will prevail, and the latter be rejected. Nor can it be taken to be a condition annexed to the previous grant; for such a construction would do violence, both to the express language of the first section, and to the manifest object of the act. This is clear, when we consider that the first section is, in terms, a present grant, and that it vests in the State the lands remaining unsold at the time of its passage,—thus granting the lands absolutely at the time of the passage of the act. And it is not to be supposed, from the nature of the subject-matter, and the terms of the grant, that anything further was intended to be done, in order to consummate the grant.

The provision under consideration must, therefore, be regarded,

either as repugnant to the previous grant, or as superfluous, in providing for the mode of vesting the title which had already been absolutely granted; and, in either case, it cannot impair the title previously vested.

If this view of the subject be correct, it follows that no patent was necessary to convey the land to the State.

The next question for consideration is, was the land in controversy sufficiently located, under the provisions of the act of Congress, to make it the subject of grant by the State, and to render the patent to the plaintiff effectual.

The mode prescribed by the act of Congress, for designating and appropriating the lands granted to the State, is, that the secretary of the interior should make out an accurate list and plat of the lands embraced in the act, and transmit it to the governor of the State. Instead of ascertaining and locating the lands in this particular mode, it appears that the lands were located by Henry C. Daniel, and that the location was approved and confirmed by the governor in writing; that these proceedings were then transmitted to the General Land Office, at Washington City, and were approved and confirmed by the secretary of the interior, and that a copy thereof, attested by the commissioner of the General Land Office, was transmitted to the office of the register, at Augusta.

This was, in substance, a compliance with the act of Congress. The object of the act was simply, that the ascertainment and location of the lands should be made by the authority, and with the sanction of, the secretary of the interior. From the nature of the subject, the list and plats had to be made by agents, employed for that purpose by the department at Washington; and it was entirely competent for the secretary to adopt any list and plats which he considered correct. He thought proper to adopt the locations made by Daniel, and filed in the Land Office in this State, and transmitted to the department at Washington. If he had, then, transmitted this list and plats to the governor of the State, the requirement of the act of Congress would have been literally complied with; but, as it had been already approved and adopted by the governor, whose confirmation in writing was attached to the proceedings when they were transmitted to the secretary, the list and plats do not appear to have been transmitted by the secretary

to the governor, but were returned to the register's office in this State, approved by the department at Washington, and to be filed among the records of the Land Office in this State; and were there filed accordingly.

For all useful purposes, this was sufficient to give validity to the locations. Under the circumstances, the transmission of the list and plats by the secretary to the governor, would have been a mere form; for it appears that the governor had already sanctioned and adopted the locations, and they appear to be filed and registered in the office of the secretary of state; and the governor, by his patent, has treated them as lands set apart to the State under the act of Congress, and the legislature has, by various acts, recognized the validity of the proceedings, and adopted the locations. Under such circumstances, the United States could not be heard to say, that its officer had not performed his duty, according to the form of the act of Congress, and to found any right upon such ground; and the State of Mississippi, the party more especially interested, could not, after such acts of recognition, allege that she was not bound by the location.

It is again objected, that the copy of the list and plats from the Land Office at Augusta, was improperly admitted in evidence, because such list and plats were not records appertaining and belonging to the Land Office, under the Act of June 29, 1822. Hutch. Code, 864, Art. 3.

These documents had been approved by the secretary of the interior, and transmitted, with his approval indorsed, to the register of the Land Office, by order of the department. The object of this was, doubtless, to instruct the register that the lands embraced in the list and plats, had been appropriated to the State under the act of Congress, and were not subject to entry at that office. It was, therefore, necessary that the documents should be filed and preserved in the office, for the government of the register and his successors; and they appear to possess the character of records, as fully as any other books or documents of the office, required to be kept to guide the officer in the discharge of his duties.

Another objection is made to the admission of the certificate of the secretary of state, and the copy from the book of lands in his

office. This objection is probably valid ; but the evidence offered was unnecessary and superfluous, inasmuch as the fact of appropriation of the land to the State, had been sufficiently established by other evidence. Hence, this evidence was immaterial, and its admission is not ground of error.

The next error assigned, is the first and second instructions given by the court to the jury, at the instance of the plaintiff, leaving it to the jury to determine the question of law, whether the land in controversy enured to the State under the act of Congress.

This was obviously irregular and improper ; but it appears that the jury came to a correct conclusion upon the subject; and, as the error in the court did not operate to the defendant's prejudice in law, it was no ground for setting aside the verdict and granting a new trial.

The last error assigned, relates to the refusal of the court to give certain instructions, in relation to the construction of the act of Congress. These instructions contain the same views here urged in behalf of the plaintiff in error ; and, according to the opinion above expressed, these instructions were erroneous, and were properly refused.

Let the judgment be affirmed.