Cameron *v.* Watson et al.

Let the decree be reveesed, and cause remanded for further proceedings, according to this opinion.

---

40 191
75 613

DANIEL S. CAMERON, Executor, *v.* JERRY WATSON, *et. al.*

1. LAST WILL AND TESTAMENT: PROBATE OF: CAPACITY OF TESTATOR: REAL AND PERSONAL PROPERTY: DOMICILE.—The capacity of a testator to make a will, and the rules regulating the disposition of personal property, are governed by the law of the testator's domicile: and the matter of probate belongs to the tribunal of the domicile, though there may be no property within the jurisdiction to be affected by the will. The rules regulating the disposition of real estate, are governed by the laws of the State where situated.

2. LAST WILL AND TESTAMENT: PROBATE OF: SITUS OF PROPERTY: DOMICIL: FEMES COVERT.—Where a *feme covert* derived capacity to make a will from an ante-nuptial contract, which limited her capacity to convey to certain property situated in a different State from that of her domicile at the time of her death, and she did make her will conveying the property in pursuance of the ante-nuptial contract, it is proper for the courts of the domicile of the testatrix to admit the will to probate, though it could alone dispose of the property situated in a different State.

3. SAME: CASE IN JUDGMENT.—Mrs. T., a *feme covert*, and a citizen of the State of Mississippi, by an ante-nuptial agreement, derived capacity to dispose by will of her property situated in the State of Arkansas. She made her will, disposing of all her property, and upon its being propounded for probate in the courts of Mississippi, it was resisted on the ground that the ante-nuptial contract did not give capacity to dispose of property in Mississippi, and that it could alone affect property in the State of Arkansas, and should be probated there. Held—That the will was properly propounded for probate in the tribunal of the domicile, and the validity of its dispositions was a question to be adjudicated in another form.

4. LAST WILL AND TESTAMENT: PROBATE OF: DERISAVIT VEL NON: PROBATE, NOT AFFECTED BY INVALIDITY OF BEQUESTS.—Upon an issue of *devisavit vel non*, the questions involved are the competency of the testator to make the will, the free and actual execution of the instrument by the testator, and according to the requirements of law. The legal effect of the will, and the validity of its dispositions, are to be determined afterwards by the appropriate tribunals. *Lusk* v. *Lewis*, 32 Miss. R. 300.

5. INSTRUCTIONS TO JURY: ERROR IN, WHEN GROUND FOR A NEW TRIAL.—The error of the court in instructing the jury is not a ground for a new trial, where it is manifest that the verdict is correct.

APPEAL from the Probate Court of Bolivar county. Hon. Geo. Poindexter, judge.

The facts of the case will be found in the opinion of the court, and in the brief of counsel for appellants.

The jury were instructed as follows, at the request of Daniel S. Cameron, executor:

1. That, by the laws of this State, a married woman cannot make a will of either real or personal property, situated in the State of Mississippi, even with the consent of the husband.

2. The marriage settlement in this case only conferred the power upon Mrs. Torrey to convey by will her property situated in Arkansas, and gave her no power to convey by will real or personal estate situated in the State of Mississippi; and although the jury may believe that Mrs. Torrey executed the instrument propounded as a will, yet it cannot operate as a will of property situated in Mississippi by reason of any power given in that instrument, or consent contained therein.

The court further instructed the jury, that a married woman according to the common law can make a will, though she be a *feme covert*, where her property is held as separate estate, which places her in the shoes of a *feme sole*, there being no statutory provisions to the contrary in this State.

*F. Anderson, W.* and *J. R. Yerger*, for appellants.

This case comes by appeal from the Probate Court of Bolivar county. Application was made to probate a paper purporting to be the last will and testament of Mrs. F. M. Torrey. It was admitted to probate, and subsequently the executor of G. G. Torrey filed a petition, for the purpose of contesting the validity of the paper as a will. And issue, *devisavit vel non*, was made up and tried, and the verdict found in favor of the validity of the will.

At the time the alleged will was made, Mrs. Torrey was a married woman, the wife of G. G. Torrey, residing in the county of Bolivar, in the State of Mississippi. It was executed during her temporary absence in Arkansas.

In the year 1857, Mrs. Torrey, then Mrs. Walker, and G. G. Torrey, were married. Previous to the marriage, a marriage contract was made, which recited "that Mrs. Walker was

seized and possessed of a large and valuable estate, real and personal and mixed, situate and being in the State of Arkansas." And that Torrey was possessed of a considerable estate, real, personal, and mixed, situate and bein in the State of Mississippi. And it was provided, that notwithstanding the said marriage, "they shall not have any claim whatever, either in law or equity, the one upon the aforesaid separate estate of the other, or upon the rents, issues, and profits thereof, but the same shall remain, continue, and be to them, respectively and severally, or to such uses as they shall severally see fit to appoint. By said marriage contract Mrs. Walker, in pursuance of the same, and with the consent of said Torrey, conveyed to Abner L. Gaines " all her estate, real, personal, an mixed, of what kind soever, whether legal or equitable, possession or expectancy, in the State of Arkansas, whereve the same may be situated, but upon trust that the said Gaines should permit Mrs. Walker to keep and enjoy her said estate, with the rents, issues, and profits thereof, to her sole and separate use, or to the use of such person or persons as she by writing under her hand, or by last will and testament, may appoint; and that the said Torrey should not intermeddle therewith, and that the same, or any part thereof, shall not be liable to his control, debts, or disposal, but shall remain wholly in the power and at the disposal of her, the said Mrs Walker."

The contract further provided, that " the said Gaines should convey any of the aforesaid property to such persons as Mrs. Walker should by writing under her hand appoint, or as she should appoint by an instrument in the nature of a last will and testament; and with full power on her part, should said estate or any part thereof be sold during her life, and appointed by her to be conveyed, to receive and dispose of for her own proper use of the moneys arising from such sale or sales, and that the said moneys the said Torrey shall not intermeddle with, and that the same or any part thereof shall not be liable to his control, debts, or disposal, but shall remain wholly in the power and at the disposal of her the said Mrs. Walker, to use as she pleases during life, and to dispose of at her death, by last will

and testament, or an instrument of appointment in the nature thereof."

By the marriage contract aforesaid, Torrey agreed that the aforesaid estate of Mrs. Walker, and all the income, rents, profits, and proceeds thereof, should at all times thereafter remain and be, to and for the use and purposes of the trusts aforesaid, and that Mrs. Walker might, from time to time, dispose of, according to her will and pleasure, said increase, rents, incomes, and profits, and her said estate in the manner before provided.

When said marriage contract was entered into, Mrs. Walker resided in the State of Arkansas; she also resided there at the date of the marriage, and all the property embraced in the contract was situated in the State of Arkansas. When the alleged will was made, she was a married woman, the wife of the said G. G. Torrey, resident in the State of Mississippi, though the instrument itself was executed during her temporary absence in the State of Arkansas.

The question which this record presents, is whether Mrs. Torrey, under the laws of Mississippi, or by virtue of the marriage contract aforesaid, had a general testamentary power to dispose of her property situated in the State of Mississippi.

The statute of wills in this State provides " that every person aged twenty-one years, male or female, and not a married woman, being of a sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estates, right, title, and interest in possession, reversion or remainder, which he or she hath, or at the time of her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon, or issuing out of them, or goods and chattels, or personal estate of any description whatever."

If it were *res integra*, it might well be contended under the provisions of this statute, that a married woman could not for any purpose, or in any way, dispose of her property by will. But it has been decided in several cases, that she might, with the consent of the husband, dispose of her personal estate. This was decided in accordance with adjudications of a like character in England; but in England it was held that a married

Cameron v. Watson et al.

woman could not dispose of her real estate by will, even with the consent of the husband, because the husband at her decease did not inherit the real estate, and therefore his consent could not authorize its disposition. Under the statutes of this State, by which married women hold separate property, the husband is not the owner of it by survivorship, and it would seem that he could not by his consent authorize his wife to dispose of it any more than he could give authority to her to dispose of her real estate. The same reasons which would prevent the exercise of the power in the one case apply with equal force to the other. He could not give his consent to her will of realty, because at her death he would not inherit it; and it would seem for a like reason, as under our statutes, he is not entitled at the decease of his wife to her personal estate that his consent should not authorize her to dispose of it by will.

I refer the court to the case of. Cain v. Bunkley, 35 Miss. R. 119, for the decisions of this court in reference to the power of a married woman to dispose of her separate estate by will.

While it is true that, at law, a married woman could not dispose of her separate estate, in personal property by will, without the consent of the husband, nor in real estate even with his consent, yet it is equally well established, that a married woman holding separate estate according to the peculiar principles of chancery, which as to such property treated her as a *feme sole*, might dispose of it by will without the consent of her husband. It is also true that an ante-nuptial agreement could confer upon the wife power to dispose of her property by will or otherwise, and that a disposition made of it, in accordance with the power, would be valid and upheld.

I do not contend, therefore, that Mrs. Torrey could not dispose by will of her property situated in the State of Arkansas, because that power was expressly conferred upon her by the marriage contract; but her power is limited and controlled by that instrument, and extends to no other property than is contained in it. By reference to that instrument, it will be seen that it refers exclusively to her property situated in Arkansas, with the rents, issues, and profits thereof, and authorizes her to appoint, by an

instrument in the nature of a last will and testament, the manner in which said property shall be disposed of. It also authorized her, in the event of the sale of any of the property in Arkansas, to dispose of the " moneys " arising therefrom. There is no reference to any other property than that situated in Arkansas, nor any power given to dispose of any other. While, therefore, Mrs. Torrey could lawfully dispose of the property mentioned in the marriage contract, in the manner designated therein, she had no power to dispose of any other property she might have had at the date of the marriage contract, or might have subsequently acquired. As to all other property, she was governed in its disposition by the general law of the State.

It does not appear in the record that any of the property mentioned in the marriage contract is situated in Mississippi, or that Mrs. Torrey had any personal estate whatever situated therein. The will itself contained specific legacies of slaves to different parties, but it does not appear that those slaves were ever in the State of Mississippi. There is a legacy of $2,000 to be paid out of the proceeds of her property, which the trustee was directed to keep together and manage, until the payment of the legacies mentioned in the will. By the eighth clause of the will, her trustee was instructed to sell all her landed property in the States of Arkansas and Mississippi, and pay over the proceeds to her brothers and sisters.

As Mrs. Torrey was only empowered by the marriage contract to dispose of particular and specific property mentioned therein, it was clearly erroneous in the court below to admit the will to probate generally in the State of Mississippi. By so doing Mrs. Torrey is treated as a *feme sole*, capable of disposing of her property by will, without restriction, instead of being treated as she was, a married woman incapable of making any disposition of her property except to the extent limited in the marriage articles. To have admitted the will of Mrs. Torrey to probate in the State of Mississippi at all, or for any purpose, there should have been evidence before the court, that some of the property mentioned in the marriage contract, or the proceeds thereof, was in the State of Mississippi. By the contract itself, all the

Cameron *v.* Watson et al.

property appeared to be situated in the State of Arkansas, and in the absence of proof that part of it was in the State of Mississippi, the court should not have admitted the will to probate in that State for any purpose.

It has been argued by counsel that it may be possible that some of the property, mentioned in the marriage contract, may have been situated in the State of Mississippi at the date of the will. But this is an affirmative fact necessary for them to have shown before the court in Mississippi could take jurisdiction and grant probate of the will for any purpose. As a married woman, Mrs. Torrey had no power generally to make a will. It was necessary, therefore, before probate of a will made by her could be granted at all, that affirmative proof should have been made of those special circumstances, which would have authorized her to make one, or which would have authorized the admission of the one made to probate. In the absence of proof, the court had no authority to presume the existence of a state of facts, that would have justified the admission of Mrs. Torrey's will to probate in the State of Mississippi. The general power to make a will in this State was denied to her; the special right to do so, if it existed, should have been shown affirmatively, and could not be presumed by the court in the absence of proof. The court therefore erred, on the facts apparent in this record, to admit the will of Mrs. Torrey to probate at all; and it most clearly erred in admitting it to probate generally. It should have been restricted to such property as, by the marriage articles, she was authorized to dispose of by will. The verdict of the jury was a general one, that the instrument propounded was the valid will of Mrs. Torrey; but even under that verdict, the court should have limited the probate of the will to the extent conferred by the power under which she purported to act.

The instructions given in the case are directly contradictory, and left the jury without any rule to guide them; and for this reason the cause should be reversed, and remanded for a new trial.

The second instruction given at the instance of the appellant, contains, as we believe, the true rule of law applicable to this case.

We insist in behalf of the appellant, in the first place, that Mrs. Torrey could make no will, except of the property mentioned in the marriage articles; and as that property was situated in the State of Arkansas, that she could make no will of any property situated in the State of Mississippi.

Secondly. To entitle any will made by her to probate in the State of Mississippi, there should have been affirmative proof made, that some of the property mentioned in the marriage articles had been transferred or brought to Mississippi.

Thirdly. And upon the admission of such will to probate, upon such proof being made, the probate should have been limited and restrictive to such property.

On the facts apparent in this record, it was therefore erroneous to admit the will to probate at all, there being no proof that there was any property in this State which Mrs. Torrey was authorized to dispose of by will.

But,even if the will should have been admitted to probate at all, it was erroneous to admit it to probate as a will generally. The position contended for by appellees that it was proper to admit the will to probate, leaving the question to be determined in future whether there was any property in this State for it to operate upon, is not sound. The existence of the facts, authorizing Mrs. Torrey to make a will of property in this State, were jurisdictional facts, necessary to be shown before any will made by her could be admitted to probate; because, being a married woman, by the general law she could make no will, and the facts necessary to make her case an exceptional one, it is incumbent on the propounders to establish, before the court could take jurisdiction of the case at all.

*C. A. Dikes, Marshall* and *Miller,* for appellees.

Whether this be a will, or an appointment in the nature of a last will and testament, makes no material difference; the legal signification and effect is precisely the same, and courts of equity carry into effect testamentary appointments of this nature. *Lee* v. *Bennett,* 31 Miss. R. 119; 3 Lomax's Digest, 71.

By the terms of this deed of settlement it is expressly

covenanted that, notwithstanding the marriage, the husband shall have no claim upon the estate of the wife, but the same shall be and remain to her sole and separate use.

In England, it has been uniformly held that, where a *feme covert* holds property to her sole and separate use, as to such property she is to be regarded as a *feme sole;* and it has there been repeatedly decided, that one of the incidents of this separate estate is the absolute power of disposition, either by gift, by deed, or by will; the rule being that "a *feme covert,* acting with respect to her separate property, is competent to act in all respects as a *feme sole;*" and "the right is not imparted by the instrument, but conrfered by equity, and not created by the settler." *Peacock* v. *Monk,* 2 Ves. 191; *Fettiplace* v. *Georges,* 7 Ves., Jr.; *Huleman* v. *Tenant,* 7 Brow. C. C. 16; *Hales* v. *Margerum,* 3 Ves. 299; *Dick* v. *Pitchford,* 1 Dev. and Bat. Eq. 480; 3 Iredell, 237; 7 Iredell, 111.

But where the instrument creating the separate estate expressly empowers the wife to dispose of her separate property by will, in an unbroken current of decisions running through a period of more than two hundred years, the English courts have sustained testamentary dispositions of the separate estate, made by *femes covert,* and have uniformly given them all the force and effect of wills made by *femes sole;* and the courts of the American States that have adjudicated the question, have, with a marked unanimity, adopted and affirmed this doctrine; and, although this question has not been directly adjudicated upon in this court, still this rule has been clearly recognized, and the doctrine positively asserted in a number of cases. *Pridgeon* v. *Pridgeon,* 1 Chan. Cases, 117; *Rich* v. *Cockell,* 9 Ves. 369; *West* v. *West,* 3 Ran. R. 373; *Holman* v. *Perry,* 4 Metcalf's R. 492; 3 John's Ch. R. 523; 10 Sergt. & Rawl. 447; *New-bern* v. *Freeman,* 1 Iredell, 514; *Garrett* v. *Dabney,* 27 Miss.; *Cain* v. *Bunkley,* 35 Miss.

But it is insisted by the other side that this will is invalid, because the statute of wills of this State (Rev. Code of 1857, 432) denies to married women all testamentary power.

This statute of wills is identically the statute of wills of

1821 (Hutch. Code, 649), reënacted in 1857; and the statute of 1821 is substantially the statute of wills of England (34 and 35 Henry VIII.); and this statute was in force by adoption in this country prior to, and at the time of its substantial reënactment in 1821.

This statute of wills contains the prohibitory force found in the statute of 1821; but the English courts and authorities hold that the wife's separate estate, for the purpose of enabling her to dispose of that estate, removes and destroys the disability of the marriage; the absolute ownership by the wife of separate property, as to that separate property, changes her legal status from a married to a single woman; that, being absolute owner and single, she may therefore dispose of this estate *sui juris,* thus avoiding the statutory disability imposed upon married women generally; and, where the deed creating the separate estate was made prior to the marriage, and by its terms empowers the wife to dispose of her separate property by will, as to that separate estate, the wife does not lose her character of a single woman; the instrument bars the disabilities of the marriage relation from attaching to the wife; she preserves her legal identity; the disabling force of the statute does not bear upon her condition; she is clothed with all the powers of a *feme sole,* and courts have uniformly held that she is restricted in the exercise of her powers only by the express terms of the deed of settlement. *Rundle* v. *Murgatroyd,* 4 Dall. 304; *Tyson* v. *Tyson,* 2 Hawk. 472; *Magniac* v. *Thompson,* 1 Baldwin C. C. U. S. R. 344; *Scott* v. *Lorraine,* 6 Munf. 117; *Doty* v. *Mitchell,* S. & M. 435; *Knott* v. *Lyon,* 26 Miss. 548; *Crostwaight* v. *Hutchinson,* 2 Bibb, 407.

The statute of wills of 1821 contains the disabling clause found in the statute of 1857; but this court has decided that, under this statute, a married woman, with the assent of her husband, may make a will, thus establishing the rule here that the husband's assent will avoid the disability imposed upon the wife by the statute; and this has been the ruling of courts of other States, under statutes similar to our own. *Lee* v. *Bennett,* 31 Miss. 119; *Cain* v. *Bunkley,* 35 Miss. 119; *Methodist*

Cameron *v.* Watson et al.

*Church* v. *Jaques*, 3 John. Ch. 78; 4 Yerg. 375; *Thomas* v. *Folwell*, 2 Wheat. 16; 17 John. R. 548; 8 Ligh. 27; 8 Humph. 159; 10 Barb. 604.

In the lower court it was argued that the Rev. Code materially changes the descent of the wife's property; that if the statute of descent, then in force, had been the same as the present law on that subject, the court must have arrived at a very different conclusion in the case of *Lee* v. *Bennett*, 31 Miss. R. 119.

By comparing the two acts, it will be found that the difference is merely apparent, and not at all real; that they are substantially the same, differing only in the language employed, and accomplishing precisely the same result.

It is insisted that, if a married woman may make a will with the assent of the husband, this assent must be given after the death of the wife.

By the common law, the husband acquires a fixed and vested right in the property of the wife, and, if reduced into possession during coverture, it becomes the property of the husband; this vested interest of the husband is incompatible with absolute ownership of the property by the wife, and therefore the husband cannot be deprived of this interest without his consent.

The reason in support of this rule manifestly has no application to cases where the husband has no interest in the property of the wife; for, in the former case, the law invests the husband with an interest in the property, but in the latter, the law excludes him from all right to, or interest in the property: and especially can this rule, or the reason upon which it is founded, have no application to cases where the separate estate is secured to the sole and separate use of the wife by deed of settlement made anterior to the marriage, which empowers the wife to make a testamentary disposition of her separate estate: in this case, the husband has, for a valuable consideration, parted with all interest that he might acquire, by operation of law, in the wife's property: the husband has, upon a sufficient consideration, conveyed to and conferred upon the wife rights, and has clothed her with authority to exercise powers in derogation of

all the rights and interests which the law might confer upon and invest him with, in the wife's property, by virtue of the marriage: he has, in the most formal and binding manner, given his consent that the wife might make a will: he has received and enjoyed the benefits and advantages that result to him for the rights he has parted with and denied to himself; and, therefore, it is no more necessary to its validity that he assent to the will after it has been made, or after the death of the wife, than it would be necessary, in case the wife survived the husband, that she assent to be barred of her right of dower in the estate of her husband, where, by the terms of the ante-nuptial settlement, she had accepted, in lieu thereof, the use and enjoyment of her own separate estate: otherwise the husband would not only be permitted, but would be encouraged, to enter into obligations of the most solemn, as well as of the most sacred character, and, by withholding his approval of what he had consented should be done, avoid the legitimate effect of his own act, and perpetrate the most iniquitous frauds, and inflict the greatest injuries upon those from whom he had derived the greatest advantages, and at whose hands he had received the highest benefits.

But, it is also insisted, that the identical will must be assented to before it can have any validity.

Where the instrument creating the separate estate clothes the wife with general testamentary powers, in the total absence of all pretence that any other will was made, it will be conclusively presumed that this is the identical will the husband consented the wife should make; and, for the reasons already given, his assent is not essential to its validity: besides, it has been repeatedly decided, not only in England and other States, but also by this court, that the wife's power over her separate estate is limited and restricted only by the statute or instrument creating the separate estate: and there is no difference in principle between personal and real estate; the reason of the rule, as to both is the same: for, "if a woman having land shall, before marriage, by proper conveyance, or after marriage (by fine formerly, now by deed), with privy examination, convey

her land to trustees, in trust for herself during coverture, for her separate use, and afterwards that it shall be in trust for such person as she shall, by any writing under her hand and seal, or in nature of a will, appoint, and she afterwards make such appointment, that will be a good declaration of a trust." 3 Lomax's Digest, 10; 3 Johns. Ch. Rep. 523; *Thompson* v. *Dougherty*, 12 Serg. & Rawle, 448; *Duffy* v. *The Ins. Company*, 8 Watts & Serg. 413; *Sexton* v. *Wheaton*, 8 Wheat. 229; *Picquet* v. *Swan*, 4 Mason's R. 443.

It is contended that, if this will be valid to dispose of property situated in Arkansas, it can have no effect as to property elsewhere.

This question, we think, is not involved in this controversy; the court is not now called upon to decide what particular estate, nor where the same may be situated, passes by this will. However, as counsel seem to urge the point with seriousness, we briefly reply: that the property embraced in this deed of trust is, " all her estate, real, personal, and mixed, of what kind soever, whether legal or equitable, in possession or expectancy; with the rents, issues, and profits thereof in the State of Arkansas, wherever the same may be situated;" and " the moneys arising from the sale of said estate or any part thereof."

The well-settled rule of law is, that contracts must be construed according to the intention of the parties, as that intention appears from the context of the instrument in writing, and as that intention is shown and explained by the subsequent acts of the parties. The instrument invests the wife with the right to acquire all descriptions of property, without prescribing the mode, time, or place of the acquisition of this estate " in expectancy;" then, if this estate should come to the wife in the shape of a gift, bequest, or inheritance, and one portion of the property so acquired should be situated in Arkansas, and another part elsewhere, will the provisions of the instrument instantly attach to that part which lies in Arkansas, and never attach to that which may happen to be situated elsewhere? The instrument secures to the wife the rents, issues, and profits. Was it intended by the parties that the wife should be restricted to

any particular place to receive these rents, issues, and profits, or, if she should receive a portion of them at one place, she might exercise her right of ownership over them, but that she should have no authority over any part that might come to her elsewhere?

The instrument authorizes the wife to receive the moneys arising from the sale of the estate or any part thereof: but, is the wife restricted in the reception of these moneys to the place where the estate is situated, or, if they should be removed from Arkansas, would this change of place work a forfeiture to the husband, the wife thereby lose her right of ownership, and the husband acquire title to this property?

The domicile of the husband, at the time these marriage articles were made, and at the time of the marriage, was in Mississippi; after the intermarriage, and at the time of the death of the wife, the domicile of both husband and wife was in Mississippi. The parties contracted with a view to a residence elsewhere than the place the wife's estate was situated; therefore, it is clear that the parties intended to empower the wife to receive, use, and dispose of her entire estate, both in possession and in expectancy, with the rents, issues, and profits, and all moneys arising from the sale of any of said estate, without regard to where the same, or any part thereof, might be situated, either during the lifetime of the wife, or at the time of her death. In support of these views, we refer to the doctrine of the wife's separate estate carrying with it the *jus disponendi*, and the rule that where property is settled to the sole use of the wife, she may dispose of it, whether expressly authorized to do so or not, if not expressly prohibited from so doing, contained in the authorities already cited.

As to the matter of the "married woman's law" having anything to do with the wife's separate estate in this case, we deem it sufficient to reply, that the statute of Arkansas authorizes the making of this will, in these words: "No married woman shall be capable of making a will, unless she have power by marriage settlement to do so, or authority in writing by her husband before marriage." Digest of the Laws of Arkansas, 1073.

HANDY, C. J., delivered the opinion of the court.

This is an appeal from the Probate Court of Bolivar county. An issue of *devisavit vel non* was made up in that court on the petition of D. S. Cameron, executor of George G. Torrey, deceased, filed to contest the validity of the will of Mrs. Frances M. Torrey, who was the wife of said G. G. Torrey, and which was propounded for probate in the said court. The issue was made up, and tried before a jury, who found a verdict establishing the will; and a motion to set aside the verdict and grant a new trial was overruled by the court, and a bill of exceptions taken thereto.

It appeared in evidence that an ante-nuptial contract had been entered into between the said G. G. Torrey and the testatrix (then Mrs. Frances M. Walker), dated November 5, 1857, which recited that the said Frances was seized and possessed of a large and valuable estate, real, personal, and mixed, situate and being in the State of Arkansas, and that said Torrey was seized and possessed of a considerable estate in the State of Mississippi; and that a marriage was intended shortly to be had and solemnized between the said parties, and that it was agreed by them, that, notwithstanding said marriage, they should have no claim whatever, the one upon the aforesaid separate estate of the other, or upon the rents, issues, and profits thereof, but the same should remain, continue, and be to them respectively and severally, or to such uses as they should think fit severally to appoint; and therefore the said Frances, with the consent of said Torrey, conveyed all her estate in the State of Arkansas, of what kind soever, and wherever situated, to Gaines in trust, to permit her to keep and enjoy the said estate, with the rents, issues, and profits thereof, to her sole and separate use, or to the use of such person or persons as she, by writing under her hand, or by last will and testament, may appoint, and that said Torrey should not intermeddle therewith; and that the same or any part thereof should not be liable to his control, debts, or disposal, but should remain wholly in the power, and at the disposal of the said Frances; and in further trust, that the said trustee would from time to time convey said estate, or any part

Cameron *v.* Watson et al.

thereof, to such persons as she should appoint by writing under her hand, or by an instrument in the nature of a last will and testament, with full power on her part, should said estate, or any part thereof, be sold during her life, and appointed by her to be conveyed, to receive and dispose, for her own proper use, of the moneys arising from such sale or sales, and that said Torrey should not intermeddle therewith, and that the same should not be liable to his control, debts, or disposal, but should remain wholly in her power and disposal, to use as she pleased during life, and to dispose of at her death by last will and testament, or an instrument of appointment in the nature thereof. And the said Torrey thereby covenanted that her estate, and all the income, rents, profits, and proceeds thereof, should at all times thereafter remain and be, to and for the uses and purposes before expressed, and that said Frances might from time to time dispose of, according to her will and pleasure, said increase, rents, income, and profits, and her estate as therein provided for. And the said Frances released all claim on the estate of said Torrey.

This contract describes the said Torrey as being of the county of Bolivar, State of Mississippi, and the said Frances as being of the county of Chicot, in the State of Arkansas; and it was duly recorded in the proper offices in Bolivar county and in Chicot county.

The will propounded purports to be an instrument of appointment in the nature of a last will and testament, made in virtue of the foregoing deed of settlement, and bears date 25th March, 1861; and its execution and publication in Chicot county, Arkansas, and the attestation of the subscribing witnesses, so as to make it a valid will both as to real and personal estate, were duly proved. It was admitted, on the trial, that G. G. Torrey and Frances M. Torrey had no issue born of this marriage; that she had no child at the time of the marriage to Torrey; that, when the paper propounded as a will was executed, she resided in this State; and that at the date of the execution of that paper, and when she died, she was the wife of G. G. Torrey; that he survived her, and that he resided at the time of his

marriage with Frances M. Torrey, in Bolivar county in this State, and continued so to reside up to the time of his death.

It is conceded, by counsel for the appellant, that the ante-nuptial contract in this case conferred on Mrs. Torrey the power to dispose of her separate property, by will or otherwise, according to the provisions of that agreement; but it is insisted that her power to do so was limited by the terms of that instrument to her separate property in Arkansas, and to the "income, issues, rents, proceeds, and profits" thereof, and that she had no power, under the agreement or otherwise, to dispose of real or personal property in this State; that, as it was not shown that there was any property *in this State* that she had the power to dispose of, under the agreement, the will should not have been admitted to probate in this State for any purpose.

This position cannot be maintained to the extent stated. It appears, by the evidence, that Mrs. Torrey had her domicile in this State, from the time of her marriage to G. G. Torrey to the time of her death, and that she died here. The general rule is, that the capacity of a testator to make a will, and the rules regulating the disposition of personal property, depend on the law of the domicile; and, to that extent, that the matter of probate belongs to the tribunal of the domicile; where, therefore, the testator has, by law, the *general power* of disposition by will, it is immaterial, with reference to the question of probate, whether there was property in this State to be affected by the will or not; for, in such a case, the matters for determination would be, whether the testator was competent, by our laws, to make a will, and whether it was executed according to those laws. If these facts were found in favor of the will, it would, of course, be admitted to probate here; and it would affect all personal property embraced in it, wherever situate, though it would not convey real estate situate in another State, unless executed according to the laws of that State.

This is the rule in cases where a general power of disposition by will exists. Does a different rule prevail where the power of disposition is limited to particular circumstances or conditions on which its exercise depends?

When a will is propounded, in such a case, the court finds that the párty had not the general power to make it, and that its validity depends on a special grant of power to make it, under particular circumstances; and the question must necessarily arise, whether those circumstances exist. In this case, the power was not general, but special, and restricted to property in Arkansas and its proceeds. The first question, then, that must arise on the application to probate, would be as to the competency of the testatrix to make a will, and it would be found that that power was derived solely from the ante-nuptial agreement, and was limited by that agreement to her property in Arkansas and its proceeds. The court would find, on examination of that instrument, that the testator was empowered to dispose of her lands and personal property in Arkansas, and that the will had been executed and was proved according to the formalities required by our laws. It would have jurisdiction, by reason of the domicile, to give full effect to the will as to the personal property in Arkansas, embraced in the deed of settlement, wherever it might subsequently be removed, and the proceeds of the real and personal estate embraced therein, wherever situate; and, of course, the probate would be granted. The probate, though general, would give effect to the will only so far as the testator had power, by virtue of the ante-nuptial agreement, to dispose of the property mentioned in it.

It is clear, therefore, that the court had jurisdiction to grant probate of the will as to the personalty and the proceeds of the lands mentioned in the deed, wherever they might be found; and that it is no objec ion to its exercise, that the property was not in this State.

It is next objected tl t the probate was general, and that it did not restrict the oper ion of the will to the property in Arkansas, and its rents, issues, profits, and proceeds.

But this is immaterial. The propriety of the probate must be tested by its legal effect; and that clearly was confined to the specific property mentioned in the deed of settlement, and the rents, issues, profits, and proceeds of it. When a will is propounded for probate, devising lands in another State, and

Cameron *v.* Watson et al.

personalty, it is customary and proper to admit it to probate generally, though it may not be executed in form, and cannot have the effect to convey lands in another State, as required by the laws of that State. So, when a will contains dispositions, some of which lid, and others illegal and void, if the will be executedoved according to the requirements of law, it should be admitted to probate as a duly executed and established will, leaving its legal .effect to be afterwards determined. *Lusk* v. *Lewis*, 32 Miss. 300. And this is especially the case in the trial of an issue of *devisavit vel non ;* for such an issue involves no other questions but the competency of the testator to make the will, and whether the instrument was executed with all the formalities required by law, and in all respects under such circumstances as to make it the free and true last will and testament of the testator. Questions of its construction and legal effect are plainly not embraced in such an issue, and should be left for subsequent adjudication.

The last ground of error insisted on is, that the instructions of the court were contradictory to each other, so that the jury were left without any proper rule to guide them in determining the issue.

There is no error in the instructions except in the second, and that was given at the instance of the appellant, and he cannot complain of it. But no injury was done by it, for the verdict was correct, notwithstanding the erroneous instruction. In such a case the error in the instruction is not ground for granting a new trial, where it is manifest that the verdict was correct, upon the facts appearing in the record. *Fore* v. *Williams*, 35 Miss. 533.

Let the decree be affirmed, with costs.