MEMPHIS &. CHARLESTON R. R. Co. *v.* F. E. WHITFIELD.

1. COMMON CARRIERS—NEGLIGENCE—PRIMA FACIE.— Stopping the train at an unusual place renders the company presumptively in the wrong to that extent, and the *onus* of explaining this neglect is thrown upon them.

2. SAME—RAILROAD COMPANIES—STATIONS.—Railroad companies are obliged to provide platforms, or safe places of deposit, for passengers to alight on at their stations, and to deliver passengers on such platforms or safe places of deposit.

3. RAILROADS—PASSENGERS GETTING OFF.—The obligation of a carrier to assist passengers in getting off and on, depends largely upon the nature of his vehicle, the facility with which access may be had without assistance, and similar circumstances.

4. SAME.—A railroad company stopping their train at a place where passengers can, only with difficulty, get out, is bound to assist them to do so.

5. SAME—TRAIN MUST BE BACKED IF DEMANDED.—The conductor is bound, upon the

request of any passenger, to move the train backward or forward so as to enable the passenger to step upon the platform.

6. DAMAGES—MUTUAL NEGLIGENCE.—Parties to contributory injuries cannot recover for the damages sustained.

7. SAME—MUTUAL NEGLIGENCE A QUESTION FOR JURY.—Where the gist of the action is negligence, the question whether the defendant has been negligent so as to subject him to liability, and whether the plaintiff has been negilent so as to exempt the defendant from liability, is one of fact for the jury under the instructions of the court as to the applicable principles of law.

8. SAME.—CARRIERS OF PASSENGERS BY STEAM—MEASURE.—There are two general classes of damages for injuries to the person by passenger carriers by steam. 1st. Where compensatory damages only are recoverable, and the measure of damages or subjects of compensation are governed by established rules; 2d. Wherein the rule of law is abandoned and the jury may indulge in sentiment and feeling, or, in other words, may award what are denominated exemplary, vindictive, or punitive damages, and sometimes " smart money."

9. EXEMPLARY DAMAGES—WHEN AWARDED.—Punitive damages may be awarded where fraud, malice, gross negligence, oppression, insult, rudeness, caprice, willfulness, or other cause of aggravation mingle in the controversy, and are proven to the satisfaction of the jury, and in their judgment such damages ought to be awarded.

10. COMPENSATORY DAMAGES—MEASURE.—The passenger who has been injured by the negligence of the company's servants is entitled to full compensation for his injury.

11. SAME—SUBJECTS TO BE CONSIDERED BY JURY.—In estimating compensatory damages the jury may take into consideration loss of time, pecuniary expense, bodily pain, any incurable hurt, expenses of cure, and mental suffering caused by the injury, also future damages for loss of health, time, and the use of limbs, bodily pain and suffering, and mental suffering, where actual injury to the person has been sustained.

12. EXEMPLARY DAMAGES—CASE AT BAR.—The following instruction was improper, because too broad, and because it omits important particulars : "In all actions of tort against common carriers, the jury, in their discretion, are to weigh all the circumstances of the case, and are authorized to find exemplary damages when they consider the personal wrong and injury of such a character as, in their judgment, to call for the imposition of exemplary damages."

13. SAME.—The following instruction was properly refused : "Even though the jury believe the plaintiff was wholly without fault in producing the injury complained of, and used all proper care to prevent the accident or injury, yet, if, from the evidence, the jury believe that there was no recklessness, wantonness, willfulness, or malice on the part of the defendants, or their agents, the jury cannot find exemplary damages."

14. INSTRUCTIONS—ERROR IS NO GROUND FOR REVERSAL IF VERDICT GOOD.—Error in the instructions is not ground for reversal where it is manifest that the verdict was correct upon the facts appearing in the record.

15. MEASURE OF DAMAGES A QUESTION FOR JURY.—Upon a mere matter of damages, where different minds might, and probably would arrive at different results, and nothing inconsistent with honest exercise of judgment appears, the verdict should be left as the jury found it.

Error to the circuit court of Alcorn county. BOONE, J. The facts appear in the opinion of the court. ·

The appellants assign the following causes of error:

1st. The jury found contrary to law and the charges of the court.

2d. The verdict was contrary to the evidence.

3d. The court erred in refusing the 2d, 3d, 4th, 5th, and 8th charges asked by the appellants in the court below.

4th. The court erred in giving the 1st, 2d, 3d, 4th, 5th, and 6th charges asked by the appellee in the court below.

5th. The court erred in refusing and overruling the motion of appellants for a new trial in the court below.

6th. The damages are excessive and vindictive.

*Inge, Beene, & Curlee,* for plaintiff in error.

This is an action brought by the appellee, Whitfield, in the circuit court of the county of Tishomingo, state of Mississippi, to recover damages for alleged injuries sustained by him while a passenger on the train of appellant, through the negligence, carelessness, and incompetency of the employees of appellant. The right to recover damages for injuries to the person, such as is complained of by Whitfield, depends upon several concurring facts. 1st. The party charged with committing the injury must be shown to have been guilty of some degree of negligence; 2d. The party receiving the injury must be entirely free from any negligence that contributed to the injury; must be entirely free from doing any act without which the injury would not have occurred. In other words, the plaintiff cannot prevail in his suit, simply by proving that the defendant in the court below was guilty of negligence, if it appears that he was also guilty of negligence or carelessness that contributed to the accident. The question is not one of comparative negligence. Where both parties have been guilty of conduct and acts that contributed or produced the injury, the comparison of fault will not be tolerated, but both being in the wrong, the law leaves each as to the other remedyless. 6 Abbott's Dig., 396; 24 N. Y., 430; Buns v. Hous. R. R., 19 Conn., 566; Murch v. Concord R. R. Corp., 9 Foster, 9; Sedgwick

on Measure of Damages, 539; Comstock, 358, 369; Neal v. Gillett, 23 Conn., 437; 2 Hilliard on Torts, 124, 125; Pierce on American Railroad Law, 272, 273, 274, 275, 276; 3 N. Y., 516. If the plaintiff was in fault, the negligence of the company must be of such a character as to imply a willingness to inflict the injury, to entitle the plaintiff to recover. Evansville v. Landermilk, 15 Ind., 120; Ohio v. Gullett, ib., 487; Waldon v. Portland, 35 Maine, 422.; Hilliard on Torts, 124. If the party charged be in fault, yet if the proximate and immediate cause of the injury be the unskillfulness of the plaintiff, there is no relief in law, and he is without a remedy. Sedgwick on the Measure of Damages, 103, 104; 2 Starkie on Ev., 741; 2 Hilliard on Torts, 130; 5 Ell. & B., 849; Stucke v. Milwaukie G. Wis. R., 202; Pierce on American R. R. Law, 276. A passenger is inexcusable in jumping from a train in low and wet ground, and if in so doing he is injured, he cannot recover damages for the injury. Sherman & Redfield on Negligence, 312; Evansville & C. R. R. Co. v. Duncan, 28 Ind., 441. If a passenger declines or neglects to use the steps and other appliances attached by the company to their coaches, for the purpose of ingress and egress, and is injured in consequence thereof, the fault, the neglect, the negligence, is with him, and not with the company, and he cannot recover damages for said injury. Siner v. Great Western R. Co., 3 Exch., 150; 4 ib., 117; Sherman & Redfield on Negligence, 319. It is the duty of persons dealing with railroad companies, to take notice of the regulations established by the company. S. R. R. Co. v. Kendrix, et ux., 40 Miss., 387.

The above are the principles of law, as we conceive, that should govern the case at bar, and if we are right in thus concluding, we cannot see upon what principle of law the judgment of the court can be sustained. The proof in the case clearly establishes that on the morning of the happening of the accident, the rails of the track were wet and slippery, a large train of cars were attached to the engine. In approaching Chewalla, the place of Whitfield's destination,

from the east the grade was a little down, and owing to these facts the caboose car passed about two hundred yards beyond the depot, notwithstanding all the appliances, usual and customary in such cases, and under such circumstances, were employed and used to prevent the occurrence. In reality, the proof shows the utmost care was used, which is all that can be expected or required. Miss. C. R. R. Co. v. Miller, 40 Miss., 48; Vicksburg & Jackson R. R. Co. v. Patton, 31 Miss., 156. After passing the depot, Whitfield demanded to be backed to the depot, and the conductor signaled to the engineer to back the train—which the conductor swears was impossible, owing to the slickness of the rails caused by the cold, wet weather. Hence, Whitfield was requested to get out. There were three rails or bars of iron running parallel with the body of the car and a step or stirrup extending down the side of the car within eighteen inches of the ground, used and placed there for the purpose of getting in and out of the cars, but Whitfield, instead of using these appliances, sat down in the door which was about four feet from the ground, and swung himself out at a place where the ground was slippery and rotten, and the ground giving way, his ankle was dislocated. Now, was he not guilty of want of caution and prudence? Was he not negligent? There were steps extending within eighteen inches of the ground, which he could have used and made an easy and safe descent from the train, but preferring to risk his own judgment to the appliances the company had placed there, he jumps or swings himself from the door, and is thus injured by his own act. It will not be contended that the company would be liable if he had jumped from a window; the door was four feet from the ground and the difference was but little in the height of the two apertures. If the appellee had remained in the car would he have been injured? It was not the running of the train beyond Chewalla that injured him—but his own act in rashly and imprudently alighting from the train in the manner the testimony develops. The proximate and immediate cause of the injury was

the unskillfulness of Colonel Whitfield in getting out of the car, and the remote cause, that he was carried a short distance beyond the depot, by the train—and that, too, under circumstances that exonerate the company from all blame— the train was long and heavy—the track was slick with ice and frost; the whistle was sounded and brakes set half a mile from the station, which clearly shows all was attention, every man at his post and doing all human foresight could discern and prudence suggest, to stop at the proper place, no willfulness, no recklessness, no imprudence on the part of the employees of the road.

But, it was insisted that we should have at least made the effort to back the train. Such is not the requirements of the law. The engineer and conductor knew whether the train could be backed in the condition the track was in from snow, frost, rain and cold, and if, as the conductor swears, it was impossible, they were not required to make the effort—the law requires impossibilities of no one. Again, the passenger train was thundering on behind, freighted with human life, and did pass the freight train nine miles from there, coming up in sight of it as it passed in on the side track at Pocohontas, the next station, and there passing it. Suppose they had continued ten or fifteen minutes in endeavoring to back the train at Chewalla, a collision would have been imminent, indeed, almost impossible to prevent, and the loss of human life incalculable. Then the traveling public and the law would have pronounced the company guilty of gross and willful negligence, and the most severe penalties should, and would have been meted out to the road. The appellant would have been without just and reasonable excuse, or even plausible justification had he obstructed his track while a train was rapidly approaching, on a grade that was slightly down until the spot was reached, and thus invite and court the destruction of the passengers on the approaching train.

The testimony of Enright and Colonel Whitfield is the only testimony that pretends to give the circumstances attendant upon the happening of the accident. Enright was

the conductor of the train and Whitfield, the plaintiff in action; and so far as the question of interest is concerned, Enright is certainly entitled to as much credit and consideration as the appellee, and in all other respects, so far as the proof in this case develops or we know, and upon a dispassionate review of the facts and circumstances as detailed by them, we are confident the court will conclude, the jury found contrary to the law and evidence, and will sustain the two first assignments of error.

The third assignment of error is that the court erred in refusing the second, third, fourth and fifth charges asked by appellant in the court below. The second charge only asserts that if the plaintiff, at the time of the injury, was chargeable with any want of ordinary care, and thereby contributed to the injury, he is without remedy, even though the defendants were guilty of negligence. The third and fifth charges were to the same effect, but presented different language, so as to enable the jury to fully understand and comprehend the legal principle invoked. They are clearly law, and it seems but simple justice that the jury should have the law clearly and explicitly presented and laid down to them, that they may arrive at an enlightened and correct judgment, and the refusal of these charges by the court would, and no doubt did, lead the jury to infer they were not the law, and influence their verdict. It may be assumed, however, that the same principles were enunciated in our first charge, and the court committed no error in refusing the second, third and fifth charges. Two principles of law are enunciated in the first charge, and all allegations of the other three charges could only be drawn inferentially, if at all, from that charge. It was, in fact, only preliminary or a foundation for the second and third charges, and a court has no right to refuse a charge which is the law and applicable to the case, simply because the propositions of law embodied in the refused instructions might have been drawn from others given. Payne et al. v. Green, 10 S. & M., 508. To sustain the correctness of the principles of law asserted in refused

charges, the appellant cites the authorities heretofore referred to in this brief.

The fourth charge asserts that exemplary and vindictive damages can only be given where the evidence shows either recklessness, wanton willfulness or malice, which the court positively refused, and gave no charge explaining or modifying the law on that point. The charge is law, as we understand it, and the only matter of surprise to us was that the court refused it. The following authorities we think fully establish the rule of law as enunciated in the charge : Hilliard on Remedies for Torts, 442 ; Dibble v. Morris, 26 Conn., 416 ; Tillotson v. Cheathan, 3 Johns., 56 ; Milburn v. Beach, 14 Miss., 104 ; McWilliams v. Bragg, 3 Wis., 424 ; Wilkins v. Gilmore, 2 Humph., 140 ; Edwards v. Beach, 3 Clay (Tenn.) 447 ; Hatch v. Pendergrast, 15 Md., 251 ; Dennison v. Hyde, 6 Conn., 108 ; Williams v. Reil, 20 Ill., 147 ; Peoria, etc., v. Loomis, ib., 235 ; Day v. Woodworth, 13 How., 363–71 ; Treat v. Barber, 7 Conn., 274 ; Wylie v. Smitherman, 8 Iredel, 236 ; Sedgwick on the Measure of Damages, 354, 522,532, and notes (4 ed.) ; Barnard v. Poore, 21 Pick., 378 ; 2 Greenl. Ev., 209 ; N. O., J. & G. N. R. R. v. Statham, Opinion Book, high court errors and appeals, p. 271.

The fourth assignment of error is that the court erred in giving the sixth charge as asked by the plaintiff. Respectfully refer to authorities last cited to show error of the court in giving this charge.

The eight charges asked by the appellant in the court below and refused by the court, is so clearly the law, we deem it useless to cite any authorities except as above cited.

*Gholson & Cooper*, for defendants in error.

" Railroad companies are bound to the utmost care and diligence of very cautious persons ; and of course they are responsible for any, even the slightest neglect." N. O. J. & G. R. R. v. Albritton, 38 Miss., 274 ; Sher. & R. on Negligence, 21, 296, 397, and note ; 2 Greenl. on Evidence, § 221 ; 1 Sneed's (Tenn.), 220.

They are held to the strictest responsibility for care, vigilance and skill on the part of their employees.    Farwell v. B. & W. R. R. Co., 4 Met., 49; N. O., J. & G. N. R. R. Co. v. Albritton, 38 Miss., 275.

Railroad companies are bound to provide platforms or safe places of deposit for passengers to alight on at their stations, and to deliver passengers on such platforms or such safe places of deposit.    Sher. & R. on Negligence, 311 ; Angel's Law of Carriers, 433, § 344 ; 8 Allen's, 227.

If plaintiff (in court below) was lawfully upon defendant's cars, and passage money paid, defendant was liable as passenger-carrier, even though the car was not usual passenger. The relation of carrier and passenger had attached with all of their incidents.    35 Barb., 193; ib., 389 ; 39 N. Y., 227 ; 14 How., 468; Redfield on B. W., § 150, note 15; 1 Sneed (Tenn.), 220 ; Sher. & R. on Negligence, 324–5.

The plaintiff in error was guilty of a tort in running by depot at Chewalla, and requiring defendant in error to get off in a swamp ; for which, alone they are liable in punitive or exemplary damages.    N. O., J. & G. N. R. R. Co. v. Hurst, 36 Miss., 666.

The injury to defendant in error was the result of tort of plaintiff in error, in requiring him to get off at such an unusual, difficult and dangerous place, and constitute " circumstances " of great " aggravation and injury."    S. R. R. Co. v. Kendrix et ux., 40 Miss., 390.

In the case of Kendrix et ux., above cited, the court say : " A neglect of duty, clearly not attended with any circumstances of insult, of aggravation of feelings of injury to the person or his property, or of bodily or mental suffering would not justify vindictive damages."    Thus, negatively affirming the position that if the neglect be gross or attended by any of these circumstances of aggravation, etc., they are liable in punitive damages.    Pierce on Am. R. W., 254; Sher. & R. on Negligence, 647–8 & 663–4; N. O., J. & G. N. R. R. Co. Albritton, 38 Miss., 276.

Exemplary damages when allowed.    36 Miss., 660 ; 38 ib., 275–6–7 ;  40 ib., 90.

Bodily pain and suffering, etc., may be proven, and are " circumstances of aggravation," warranting exemplary damages. Pierce on Am. R. W. Law, 244, and authorities above cited.

It is the duty of juries in certain cases, not only to make just compensation for the private injury, but to look to the interests of society by assessing exemplary damages as a punishment. 36 Miss., 666 ; 1 Sneed (Tenn.), 220.

It is insisted by plaintiffs in error, that the testimony of Enright, the conductor, is entitled to as much or more credit than that of defendant in error; the weight of, or credit to be given to testimony, rests solely and peculiarly within the discretion of the jury, and they having determined that question by their verdict, it would be error in this court to disturb the judgment of the court below, because they might reach a different conclusion from that arrived at in regard to the weight of testimony by the jury trying the case. 40 Miss., 390.

In a case of damages of this kind, the law furnishing no legal rule of measurement, except the discretion of the jury, the supreme court will very rarely feel itself justified in setting aside the verdict, simply for excess. It will only do so where the verdict is so " improper as to evince, passion, prejudice or corruption." 36 Miss., 666, above cited and 1 Sneed (Tenn.), 220.

In the case of Hurst (36 Miss.), the cars carried him about 400 yards beyond the depot, where he got out safely, and as far as it appears from the testimony, may have been an easy place of deposit, but they refused to back the car to the station, and for this, the court held (regarding it as gross negligence) that punitive damages might be assessed by the jury. But, if after passing the station, upon demand of the passenger, the conductor had backed the train to the depot so that passenger got off without injury, the court held (Kendrix et ux.) that that was neglect, but not such as to justify vindictive damages—otherwise, if the conductor refused and failed to back to station.

If the refusal to back car is willful or capricious, it will justify exemplary damages, whether it was malicious or not. Heirn v. McCaughan et ux., 32 Miss., 19; 38 ib., 243.

In Albritton's case (38 Miss.) the judgment was reversed alone on the ground of an improper, or erroneous charge given the jury by the court below; yet in that case, the verdict of the jury was for $40,000 00, and it did not appear that the plaintiff had suffered any permanent injury or been hindered materially from his business, while in this case, the verdict is for only $4,500 00, and the testimony showing permanent injury, great bodily pain and suffering, long and painful hinderance from his professional business, and gross cruel negligence and abandonment after the infliction of the injury. In Bailey's case (40 Miss.) the court sustained a verdict of $12,000 00, where the "circumstances of aggravation," etc., were no greater than in the case at bar.

The rule of law that the principal is liable in exemplary damages for the tort of the agent, is too well settled to need further argument or discussion. N. O., J. & G. N. R. R. Co. v. Bailey, 40 Miss., 395, and authorities cited; 38 Miss.

Any negligence in railroad companies using steam locomotives, etc., may well deserve the epithet of gross. 40 Miss., 458.

Negligence of plaintiff in error being established, defendant in error is only required to use ordinary care to avoid consequences of negligence of plaintiff in error. Sher. & R. on Negligence, 29.

Ordinary care, is that degree of caution a majority of men of common intelligence would have used under like circumstances. 35 N. Y., 26; 31 Penn., 512; Sher. & R. on Negligence, §§ 20, 282.

Now, how far does the evidence sustain the charge of want of ordinary care on the part of Whitfield, plaintiff below? He acted in all things as a prudent man. He purchased a ticket in Corinth, and took passage on the first train bound West. The train did not stop at Chewalla, Whitfield's destination, but passed with the rearmost car 200 yards beyond the sta-

tion in a swamp, where the ground on the side of the track was four feet from the bottom of the car, covered with snow, slick and dangerous to alight on; here was negligence in passing, as the court say in Hendrix et ux for they do not show that it was impossible to have stopped the train at the station, and in absence of such showing the court will presume that it was possible for it to have been stopped there; then, if possible, the employees could have stopped it by the exercise of the " utmost care and vigilance." Whitfield demanded that the car should be backed to the platform at Chewalla. This the conductor refused to do. Here then was gross, willful and capricious negligence, au- thorizing and justifying the infliction, by the jury in its dis- cretion, of exemplary or punitive damages (Whitfield all the time acting in a very judicious and cautious manner); for up to this time (when they had been guilty of the tort, guilty of gross, willful and capricious negligence), even the plaintiffs in error do not claim that defendant in error had been guilty of any negligence or want of ordinary care. But here de- fendant in error (Whitfield), was forced to get out of plain- tiff's cars by their refusal to back to the platform—forced to get off in a swamp, down an embankment, with snow on the ground. There were two ways only for it to be done. One way was by means adopted, the other way was by iron bars tacked to the side of the car, and an iron step under the side of the car. He had to choose which means to get out he would use. Both were furnished there by the company or their agents, and he had a right to presume that both means were equally safe (or rather equally dangerous). He chooses to get out by the means above specified; in alight- ing on this bad place, slippery with snow, his knee-joint was dislocated, and he is lamed for life, besides other grievances.

But suppose he had elected to get out by the iron bars and step before referred to, he would have had to get out on the side of the car, with his face to the car and his back to the place where he would have to alight, and thus climb down the side of the car to the step under the car, and as this step

couldn't have been more than one foot lower than the bottom or sill of the door (which they say was four feet from the ground where he had to alight), he would, if he had selected this other and only other mode furnished, have been compelled to have jumped · backwards three feet, not knowing where or on what sort of a place he was to alight. Clearly he chose the best of the two " ways" supplied; yet, if this were not true, he at least took one of the means furnished by the company, and if it was unsafe, they should not have furnished it and are liable, and Whitfield is free from fault.

The first and fifth charges asked by plaintiff in court below, (Whitfield,) are clearly the law, and were properly given by the court; they are in the language of our own supreme court in several different cases, in each of which some one of the principles of law enunciated in these charges were involved and established. 36 Miss., 660; 38 Miss., 274; 40 Miss., 395; 1 Sneed (Tenn), 220.

Second charge asked by plaintiff in court below, and given by court, is equally correct. Sher. & R. on Negligence, 211; Angel's Law of Carriers, 433, § 344; 8 Allen 82.

So also the third charge asked by Whitfield. 35 Barb., 193; ib., 389; 39 N. Y., 227; 14 How., 468; Redfield on R. W., § 150; Sher. & R. on Negligence, 324–5.

The fourth charge asked by Whitfield, and given by the court, enunciates three well established principles of law. The first of which are sustained by S. R. R. Co. v. Kendrix et ux., 40 Miss., 390; N. O., J. & G. N. R. R. Co. v. Hurst, 36 Miss., 666.

The second principle is sustained by all the authorities, and was asked for by both sides, and given for both; and the third principle defines merely what is " ordinary care," and for the correctness of which we refer to 35 N. Y., 26; 31 Penn., 512; Sher. & R. on Negligence, §§ 20, 282.

Of the charges asked by defendant in court below, the second, third, fourth and fifth were refused by the court; the first, sixth, seventh, eighth, ninth, and tenth were all given. The second, third, and fifth charges asked by them. All

six of these charges enunciate the same principle of law, and we think those three given state the rule much broader for the railroad company, than the three refused, and are more favorable to the plaintiff in error, and certainly the court had some discretion as to when it should cease to charge the jury as to the same principle of law. It was not incumbent on the court to give the same charge a dozen times. The case of Payne et al. v. Green, 10 S. & M., 508, does not announce any such doctrine. The court says in that case, that "it is right that the jury should have the law explicitly laid down to them, and that if the court below refuse an instruction which is the law, and applicable to the case, the high court of errors and appeals will reverse the judgment, notwithstanding the circuit court may have given other instructions from which inferentially, by mere inference of law, as a consequence, the proposition of law, etc., might have been drawn." While the court is bound, under the decision, to "lay down the law applicable to the case, explicitly to the jury," it is not bound to reiterate it in as many charges as the caprice of counsel may present. Here the principle sought so often in all these charges, had been three or more times distinctly and "explicitly" charged and "laid down to the jury." It was not "inferentially" stated, but "explicitly;" nor was it drawn as a "mere inference of law," but as "a consequence" from other instructions.

Yet we insist that these three charges refused, to-wit: second, third, and fifth, do not state the law correctly. We might complain of some other of the charges involving the same principle, and which were asked by plaintiff in error, and given by the court, but as they were favorable to railroad, and given and asked by them, they can't be heard to complain, and it is not our intention or province to do so. There are two reasons: first, the jury were charged to inquire as to Whitfield's negligence, and by their verdict they have acquitted him of any want of "ordinary care," and they are the sole judges of all those questions of fact. They failed to prove "any want of ordinary care" on the part of Whit-

field, and consequently the charges are not "applicable." Second, they were too broad in their language, not stating the rule sufficiently "explicit," and were calculated to mislead the jury. For there are cases and circumstances under which damages are allowable and proper when both parties are guilty of negligence, if one of the parties is guilty of the greatest negligence, but otherwise if the parties are *in pari delictu.* 23 Pickering's R., 24; and 2, 4, and 6 Caldwell's (Tenn.) Reports. And, for further reason in this case, the railroad having been guilty of a tort before Whitfield could have been guilty of want of "ordinary care," he "was under no obligation to be cautious and circumspect to a wrong doer." 35 N. Y. R., 36; 5 Denio, 266.

The fourth charge asked by plaintiff in error is clearly not the law. It confines the finding or assessing of exemplary damages by the jury to cases where there appears to be "reckless wantoness, willfulness, or malice, or malicious intent," when all the authorities hold that it is equally proper to assess punitive damages where there has been "gross negligence," and that any negligence on the part of a corporation, or their employees, using the "dangerous power of steam" in the propulsion of their means of conveyance, "may well deserve the epithet of "gross." S. R. R. Co. v. Kendrix et ux., 40 Miss., 374, 390; 36 ib., 666; 38 ib., 276; 1 Sneed, 220.

The fourth assignment of error is, that the court erred in giving sixth charge asked by plaintiff (Whitfield), in court below. As there was no such charge asked by Whitfield, or given by the court, we suppose this assignment was an oversight.

Tarbell, J.:

This action was instituted in the circuit court of Tishomingo county, by F. E. Whitfield, to recover damages of the Memphis & Charleston R. R. Co., as common carriers, for injuries received by the plaintiff as a passenger on the cars of the company.

The declaration is in the usual form in trespass on the case for injuries to the person, through the wrongful acts of the company's servants.

Defendants pleaded the general issue. A trial resulted in a verdict for plaintiff, of $2,000, which verdict, on motion, was set aside. On the second trial the jury increased their finding to $4,500. A motion to set aside this verdict was overruled. No questions were raised upon the testimony. The motion for a third trial was on the following grounds: 1st. The verdict was contrary to law; 2d. It was contrary to the evidence; 3d. It was contrary to the instructions of the court; 4th. The instructions given for plaintiff were improper; 5th. Instructions asked by defendants were improperly refused; 6th. The verdict is excessive in damages.

The case having been brought to this court, a reversal of the judgment is asked for the causes stated in the motion for a new trial; for the further reasons that the court refused to give the 2d, 3d, 4th, 5th, and 8th instructions asked by defendants; because their motion for another trial was denied; and because the court erred in giving the 6th instruction for plaintiff.

Counsel on both sides have referred to numerous authorities, all of which, with others, we have carefully examined.

Except the 6th, the instructions for the plaintiff in the court below, and those given for the defendants therein, are unobjectionable. The plaintiff (Whitfield) purchased a ticket at Corinth for Chewalla, with which he entered a car for the reception of passengers, attached to a freight train. His ticket was taken up by the conductor. Nearing Chewalla, the signal to stop was given, but the train passed several hundred yards beyond the depot, stopping at an unusual place, which was low and wet. Whitfield demanded that the train should be backed to the platform. The conductor gave the signal to back, but the engineer made no effort to obey. The conductor then informed Mr. Whitfield, and testified on the trial, that, owing to the condition of the track and grade, the train could not be backed, and that Mr. Whitfield

must get out there. No special circumstances of insult, oppression, or tyranny, appear in the reported testimony, but the conductor stood by and saw Mr. Whitfield alight, without any offer to aid him in so doing, or by warning or advice. Nothing was said about the steps underneath the car until after the accident, and it does not appear that Mr. Whitfield had any knowledge of them. To use the steps, involved his getting out backwards, with his face to the car, and his back to the landing place on the ground. Seating himself upon the floor of the car, with his hands hold of an iron rod extending along the side of the car, he swung himself out upon the ground, wet, icy, and slippery from several days previous snows. In jumping, he dislocated and seriously injured his knee.

Whether the engineer and conductor were competent, careful and prudent men; whether the engine was a sound, strong and proper one for the train, and condition of the road; whether, in view of the previous storms, the train was overloaded, and whether the necessary skill and foresight had been exercised, seem not to have been noted on the trial. It simply appears that the train passed the depot several hundred yards; the plaintiff demanded that the train be backed; it was not done, nor was any effort made to do so, and the plaintiff was required to get out at an unusual place, where there was no platform, without aid, advice, suggestion or warning.

The facts herein being brief and simple, and having been determined by a jury of the county, we should be, independent of the question of damages under the sixth instruction for plaintiff, disinclined to look further into this case. The question, however, presented by the sixth instruction given for plaintiff, in connection with damages allowed, and the fourth refused for the defendants, are important, and require examination. The sixth instruction for plaintiff is as follows : "In all actions of loss against common carriers, the jury, in their discretion, are to weigh all the circumstances of the case ; and are authorized to find exemplary damages,

when they consider the personal wrong and injury of such a character as in their judgment, to call for the imposition of exemplary damages."

The instructions asked for the defendants, and refused by the court, except the fourth, were but repetitions, in other language, of those given, and were, therefore, properly refused in the discretion of the court. The fourth instruction referred to, is as follows: "Even though the jury believe that the plaintiff was wholly without fault in the producing the injury complained of, and used all proper care to prevent the accident or injury, yet, if from the evidence, the jury believe that there was no recklessness, wantonness, wilfulness, or malice, nor malicious intent, upon the part of the defendants or their agents, the jury cannot find exemplary damages."

The points for adjudication as we understand this case, are, first, instructions in this class of cases, invoking the rights, obligations and duties of the respective parties; and second, damages when they should be compensatory only, embracing the subjects of compensatory allowance; and when punitory damages may be allowed.

Up to the point of stopping the train beyond the Chewalla depot, the responsibility was wholly with the company and its agents. There was up to that time, no fault on the part of the plaintiff in the action, nor did he contribute in any way to the neglect of the railroad company, in running past the station. In thus passing the platform, and requiring the passenger to alight without assistance, in an unusual place, and without a safe spot to alight upon, the company was *prima facie* guilty of a neglect which it was the province of the jury to characterise from the evidence, whether it was justifiable or excusable; whether unavoidable or voidable; and whether all the circumstances culminating in the stopping the train where it did stop, and the refusal or failure to back on demand to the platform, were mitigating or aggravating, were facts for the consideration of the jury. Stopping the train at an unusual place, rendered the company

presumptively in the wrong to that extent, and the *onus* of explaining this neglect was thrown upon the defendants. Sherman & Redfield on Neg., §§ 12, 280; Sedgwick on Dam., 565; Curtis v. R. & S. R. R. Co., 29 Barb., 285; Angel § 569; 2 Redfield's Law of Railways, § 176.

The next branch of this case in order of occurrence, embraces the circumstances attending the exit of Whitfield from the cars. He demanded that the train should be backed to the platform. Though the signal to back was given, no effort was made by the engineer to do so, and the conductor replied that the train could not be backed. The choice was thus submitted to the plaintiff of getting off the train at an unusual place, or of going on to the next station; a choice which the company had no right, *prima facie*, to impose upon a passenger. He was required to get out then and there, and was allowed to do so, without aid, suggestion, or warning—the conductor standing silently by his side while he was alighting. A brakesman ran to his side, after his injury, but it does not appear that he did so at the suggestion of the conductor, or that the latter so much as expressed sympathy for his sufferings.

Not only were the reasons for running past the station, the subject of inquiry by the jury, but also, the reason why the train was not backed to the platform, on demand, and all the facts and circumstances of the exit of the plaintiff from the cars of defendants. Was the refusal to back the train capricious and willful? Was the engineer competent? Was the engine sufficient? Was the train overloaded? Had judgment, skill, and prudence been exercised? If there was neglect in any of these respects, on the part of the company or its servants, what was the degree or character of that neglect? Were the means which defendants had provided for alighting from their cars ample and sufficient, under the circumstances, to insure the safe descent of plaintiff? Was the conduct of the conductor, while the plaintiff was getting out of the cars, such as the circumstances required of him? Did the plaintiff, in alighting, exercise ordinary care and prudence to avoid accidents or injuries to himself?

These were some of the questions, under suitable instructions from the court, proper for the consideration of the jury. It is true that parties to contributory or mutual injuries cannot recover for the damages sustained. 42 Penn., 493; Pierce, 272–475; S. & R. 318; Sedgwick, 103, 539; 1 Red., 545, *et seq.;* but the negligence of the respective parties, first, as to the company in running beyond the station, and then as to the conduct of the company's servants, during the exit of plaintiff from the cars; and secondly, as to the conduct of the plaintiff, himself, in his mode of alighting; because the plaintiff cannot recover for damages which he might have avoided by the exercise of ordinary care and diligence, were the turning points in the case. 41 Miss., 131; 2 Am. R. Cases, 378; ib., 399.

Railroad companies, say the court, in R. R. Co. v. Aspell, 23 Penn., 149, " must carry the passengers to their respective places of destination, and set them down safely, if human care and foresight can do it." *Vide,* also, Angel, 509, § 541, and §§ 521 to 671. Passenger carriers, says Ch. J. Shaw, in Farwell v. B. & W. R. R. Co., 4 Met., 49, " are held to the strictest responsibility for care, vigilance, and skill, on the part of themselves and all persons employed by them, and they are paid accordingly." The obligation of railroad companies to provide platforms or safe places of deposit for passengers to alight on, at their stations, and to deliver passengers on such platforms or safe places of deposit, is well settled. Sher. & R., on Negligence, §§ 275–277.

The carrier must use due care, not only in conveying his passengers upon the journey, but in all preliminary matters, such as their reception into the vehicle, and their accommodation while waiting for it. Sher. & R., § 275.

The obligation of a carrier to assist passengers in getting on and off, depends largely upon the nature of his vehicle, the facility with which access may be had without assistance and similar circumstances. Sher. & R., § 278; Warren v. F. R. R. Co.; 8 Allen, 227.

A railway company stopping its train for passengers at a

place so steep that they could not easily climb upon the train, would be bound to assist them to do so. S. & R., § 278; and most assuredly, not less· so to aid a passenger in alighting, under similar circumstances. The conductor is bound, upon the request of any passenger, to move the train backward or forward, so as to enable the passenger to step upon the platform. Sher. & Red., § 277.

The general rule as to all persons professing to exercise any trade or employment for all persons indifferently, is, that they are bound for a due application on the part of their servants, of the necessary attention, art, and skill. Angel § 540.

Although the record presents to us a case wherein the Railroad company is presumptively guilty of negligence in running past the station—in stopping at an unusual place, and in permitting a passenger to alight without assistance, under the circumstances detailed in the record; yet, if the plaintiff, in getting out, failed to observe ordinary care and prudence, in consequence of which he received the injury, he is not entitled to recover, unless the negligence of defendants was such that the accident happened notwithstanding the care and prudence of the plaintiff. Such is the doctrine of the authorities. Angel 559–561; 2 Redfield, § 177, p. 191; Pierce, 475; Sedgwick, 539, and cases therein cited; S. & R., 318, 320; Heil v. Glanding, 42 Penn., 493; 41 Miss., 131.

The conduct of both plaintiff and defendants on that occasion—whether the latter discharged all their obligations to their passenger, or were guilty of neglect—and the character or degree of that neglect, and, also, whether the passenger acted with ordinary prudence and care, should have been distinctly, as they were substantially, submitted to the consideration of the jury who have virtually passed upon these questions. *Vide* the E. & C. R. R. Co. v. Lowdermilk, 15 Ind., 120.

Siner v. G. W. R. R. Co. [Law Reports for June 1, 1868, part VI.], 3 Exch., 150, is distinguishable from the case at bar in several respects. That was an excursion train, and

too long for the platform. No directions were given to passengers to alight, nor was any demand made to back the cars. The passengers in the cars which overshot the platform, without demanding the train to be backed, voluntarily alighted, and in doing so the plaintiff was injured. The court of Exch. held, that there was no evidence for the jury of negligence in defendants, and that the accident was entirely the result of the plaintiff's own voluntary acts.

So, also, is the E. & C. R. R. Co. v. Duncan, 28 Ind., 442, wherein the plaintiff leaped from the cars, though warned that she was leaping in a dangerous place, and the plaintiff, herself, testified that she voluntarily made what she regarded as a dangerous leap. It was on the 4th of July; there was a large crowd; a long excursion train, and much haste and excitement. Provision had been made for safe descent upon one side of the car in which plaintiff was, but without observing it, plaintiff jumped from the opposite side, alighting upon a cross-tie. Held, she was not entitled to recover.

In Jeffersonville R. R. Co. v. Hendricks, 26 Ind., 228, the plaintiff voluntarily leaped from the cars, while in motion, not to escape apprehended danger, but to avoid being carried further. So, in Penn. R. R. Co. v. Aspell, 23 Penn., 147, the courts of last resort in those cases held that the plaintiff could not recover.

In Foy v. London, Brighton et al., Railroad Co. (18 C. B. (N. S.) 225), the train being longer than the platform, the plaintiff, a lady passenger, jumped from the rear car, on the advice of a porter. The court refused to set aside a verdict in her favor, for injuries thus received. *Vide*, also, S. & R., § 281, 283; Angel, § 547, 548.

Our conclusion upon this branch of the case, is, that the negligence of the respective parties involved questions of fact, which were rightfully for the consideration of the jury. Where the gist of the action is negligence, the question whether the defendant has been negligent so as to subject him to liability, and whether the plaintiff has been negligent so as to exempt the defendant from liability, is one of fact

for the jury under the instructions of the court as to the principles of law applicable thereto.    Pierce, 282, and cases cited in note 2.

We accept the findings of the jury upon the questions of negligence as conclusive.

Passing to the subject of damages, we remark that we are unable to learn from the record, whether the jury intended to find compensatory damages only, or whether they considered the amount punitive in its character.    The subject of damages, for injuries to personal property, was very fully investigated in Whitfield v. Whitfield, 40 Miss., 352, and the following rules were stated: "1st. That in actions for taking and detaining personal property, where no question of fraud, malice, oppression or willful wrong, either in the taking or detention, intervenes, the measure of damages is the value of the property at the time of the taking, or conversion, or illegal detention, with interest thereon at the time of trial, and this is the rule of law to be decided by the court.    2d. That where the trespass, detention, or conversion is attended by circumstances of malice, fraud, oppression, or willful wrong, the law abandons the rule of compensation in a legal sense, and the measure of damages becomes a matter for the consideration of the jury, guided by the evidence before them."

Based upon the same philosophy, by the same reasoning, from precisely the same motives, and for like purposes, analogous rules have obtained as to injuries to the person, modified somewhat in their application, particularly to passenger carriers by steam.    As in the case of injuries to personal property, there are two general divisions or classes of damages for injuries to the person: 1st. Wherein compensatory damages only are recoverable, and the measure of damages or subjects of compensation are governed by established rules; and 2d. Wherein the rule of law is abandoned, and the jury may indulge in sentiment and feeling, or in other words, may award what are denominated exemplary, vindictive, or punitive damages, and sometimes "smart money."

Under the first division above, it may be affirmed, as a

general rule, that "the passenger who has been injured by the negligence of the company's servants, is entitled to full compensation for his injury." Pierce, p. 493, and cases.cited.

Under the second, punitive damages may be allowed where fraud, malice, gross negligence, oppression, insult, rudeness, caprice, willfulness, or other causes of aggravation, mingle in the controversy, and are proven to the satisfaction of the jury, and in their judgment such damages ought to be awarded. Sedgwick, Angel, Pierce, Redfield, Sherman & Redfield.

Primarily, the most inconsiderate departure from the important duties imposed upon passenger carriers, will render them liable for the consequences. Angel, 539, § 568.

Again, common carriers are bound to the utmost care and skill in the performance of their duty. They are bound to extraordinary care, and liable for slight neglect.

The danger to the public which may proceed even from slight faults, unskilfullness, or negligence of passenger carriers or their servants, have induced the courts to bind the rule of the contract, *locatis operis*, much tighter than they could be insisted for on the ordinary principles of that contract. Pierce, 469, *et seq.* Angel, 539.

If the engineer on a railroad, is under any circumstances guilty of misconduct, rashness or negligence, the proprietors will be responsible for any injury resulting therefrom. Angel § 541, and cases.

And the same rule holds good as to the conductor, as of other servants of the company.

Two questions growing out of this subject of damages have given rise to discussion, and somewhat of conflict : 1st. The proper subjects, or causes of allowance of compensation, in cases of purely compensatory damages; and, 2d. The true definition of gross negligence. The differences upon these subjects have crept into some of the cases, even in our own state, and by their use by counsel on the trial, they help to invest the case under consideration with importance. We shall refer to the first of these directly. As to the second,

it has not only defied definition to the satisfaction even of the most learned of the profession, much less of the mass of those who sit on juries—but it has called forth in judicial decisions, grave doubts of the wisdom of the divisions of negligence into degrees, or grades, as slight, ordinary and gross. The authorities illustrate the difficulty of reducing the elements of gross negligence to a fixed and definite rule, and its definition will doubtless remain, as it has been, a puzzle, and hence, much discretion must be confided to the jury. Pierce, 476–9; Story on Bailment, §§ 17, 23, 571; E. & C. R. Co. v· Lowdermilk, 15 (Ind.), 120 ; 2 Kent, 750, (11th ed.,) 1867 ; 2 Redfield, 201, 220 ; 1 ib., 547–8; Sedgwick, 35, 36, 98, 521, 545 ; Sher. & Red., 653, § 600 ; 648, § 597 ; 646, § 594.

Indeed, these distinctions are directly dissented from in steamboat New World v. King, 16 How., 469, and it is asserted that the English courts seem finally to have come to the definite conclusion, that there is no difference between negligence, and gross negligence; the latter being nothing more than the former with a vituperative epithet. 2 Red., 201.

Lord Denman, says : " Between willful mischief and gross negligence, the boundary line is hard to trace—I should rather say, impossible. The law runs them into each other, considering such a degree of negligence as some proof of malice."

Reference to these conflicts of views on questions of vital importance, serves to enforce the practical necessity of greater care on the part of *nisi prius* judges in stating the rules of law applicable to each case clearly and fully to the jury.

The leading adjudications in Mississippi, in this class of cases, are V. & J. R. R. Co. v. Patton, 31 Miss., 156 ; Heirn v. McCaughn, 32 ib., 1 ; N. O., J. & G. N. R. R. Co. v. Hurst, 36 ib., 666 ; same v. Albritton, 38 ib., 243 ; S. R. R. Co. v. Kendrix et ux, 40 ib., 375 ; N. O., J. & G. N. R. R. Co. v. Statham 42 ib., 607. In Heirn v. McCaughn, the deliberate and intentional neglect of a public duty was held sufficient to sustain the verdict. In the case of Hurst, the conduct of the conductor, contended to have been oppressive, willful and insult-

ing, in connection with the neglect of a public duty, in running past a platform, and requiring a passenger to get out of the cars at an unusual place, without personal injury, was the basis of a punitory verdict. In the case of Albritton, the doctrine was very correctly stated to be, that the company is liable for all actual and consequential damages proved; and for exemplary damages, at the discretion of the jury; provided, that the testimony in the cause shows that the plaintiff received a bodily injury, and that the injury was caused by the gross negligence or wanton and willful misconduct of the engineer of defendants."

We do not understand the rule to be stated differently in the case of the S. R. R. Co. v. Kendrix et ux, 40 Miss., 375. Most certainly, a new rule is not announced, nor is it declared that previous decisions are thereby overruled.

Referring to Sedgwick on Damages, the learned judge who delivered the opinion in N. O., J. & G. N. R. R. Co. v. Statham, 42 Miss., 607, affirms that ["to warrant a jury in finding a verdict for exemplary or punitive damages, either malice, violence, fraud, or oppression must be shown to have mingled in the acts complained of."

The authority referred to by him, thus states the rule more fully than the learned Judge has quoted: "Whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy, the law, instead of adhering to the system, or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, blends together the interest of society and of the aggrieved individual, and gives damages, not only to recompense the sufferer, but to punish the offender." This doctrine, though earnestly controverted by Prof. Greenleaf, is, however, generally recognized by the authorities. Sedgwick, 532; 1 Red., 552.

V. & J. R. R. Co. v. Patton, 31 Miss., 199, was an action for killing stock The court say: "And it is immaterial whether the jury thought there was gross neglect or willful

mischief. The rules above stated, apply equally to either state of the case, and would warrant the jury in finding exemplary damages, if the circumstances of neglect or aggravation tended to justify it, and they thought fit to award it." And further, that " upon the same principle, the numerous cases, whether of gross negligence or wanton wrong, have proceeded, in which exemplary damages have been awarded; for it matters little to a party injured whether the wrong be done with a malicious intent or by gross violation or neglect of duty."

In N. O., J. & G. N. R. R. Co. v. Bailey, 40 Miss., 406, " violence and oppression " were made the basis of punitive damages, and an instruction given to the jury, on the trial, that "any negligence " by railroad companies acting " by the dangerous and powerful agency of steam," well deserved " the epithet of gross," was approved on error. *Vide*, 14 How., 468; Pierce, 481. The court described the case of Hurst, as one wherein there was " not only a breach of contract and violation of a public duty, but a willful and forcible wrong." In that case, the court said of the case of Hains v. McCaughn, that "it was conclusive of the right of the jury, in such cases, to protect the public by punitive damages against the negligence, folly, and wickedness which might otherwise convert these great public blessings into the most dangerous nuisances."

In the case of the S. R. R. & Co. v. Kendrix, 38 Miss., the court say of one of the instructions : " It should also have contained terms of qualification, that vindictive damages might be found, if in the judgment of the jury, the facts shown in evidence, rendered it proper to do so."

Again, " It is not every failure to discharge all the duties imposed by the nature of the office of carrier, that will constitute gross and willful misconduct, for which punishment may be inflicted in damages." And, " there may be cases of failure to do everything incumbent on them, which, under the special circumstances, might be partially excusable, and would, clearly, not show gross and willful misconduct, in fact, or which from the slight and immaterial nature of the

wrong resulting from them, would not justify punitive damages." Again, " a neglect of duty, clearly not attended with any circumstances of insult, of aggravation of feelings, of injury to the person or his property, or of bodily or mental suffering, would not justify vindictive damages, yet, if there be any evidence tending to show such circumstances, its weight and force rest peculiarly in the discretion of the jury," etc.

And of another instruction, that, " if taken to hold that when the carrier has been guilty of negligence, the plaintiff may recover special or exemplary damages, without any evidence tending to show circumstances of special injury or wrong, it was error," etc.

In the case of the N. O., J. & G. N. R. R. Co. v. Statham, 42 Miss., 607, no attempt was made to show that the plaintiff had suffered any injury, personally or pecuniarily. The damages were, therefore, punitive. The court stated as a rule, that, " to warrant a jury in finding a verdict for exemplary damages, either malice, violence, fraud, or oppression must be shown to have mingled in the acts complained of; " and of the evidence that " we are unable to perceive, after an examination of the record, any act of the conductor toward the defendant in error, which savors of rudeness, violence, malice, fraud or oppression," thus showing the difficulty of fixing a definite rule in these cases, as rudeness, may also, according to that case, constitute an element of special damages.

Pierce on Am. R. L., 494, says, vindictive or exemplary damages are allowed by the current of authorities in case of intentional, or malicious injuries. On page 451, the same author says, " where no actual bad motive is relied upon, it is for the court to direct the jury in what way, or by what rule, or measure they should assess the damages. But there are cases which seem to justify the remark sometimes made in them, by the courts, that there is no rule by which the damages can be measured, and they must be left to the discretion of the jury."

Mr. Justice Grier, in delivering the opinion of the court,

in Day v. Woodworth, 13 How., 563, says: "In actions of trespass, where the injury has been wanton and malicious, or gross and outrageous, courts permit the juries to add to the measured compensation of the plaintiff which he would have been entitled to recover, had the injury been inflicted without design or intention, something further by way of punishment or example, which has sometimes been called 'smart money.' This has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted, must depend on the peculiar circumstances of each case."

Gross negligence, or wanton mischief, will authorize a jury to find exemplary damages. V. & J. R. R. Co. v. Patton, 31 Miss., 156.

The jury may take into consideration the motives of the defendant, and if the negligence is accompanied with a contempt of the plaintiff's rights and convenience, they may give exemplary damages. Embler v. Myers, 6 Hurlst, and N., 54. There is a difference between an injury which is the mere result of such negligence, as amounts to little more than an accident, and an injury, willful or negligent, which is accompanied by expression of insolence. Ib.

Punitory damages are allowed, where the act causing the injury has been willfully done; where the circumstances show a deliberate, pre-conceived, or positive intention to injure, or that reckless disregard of the safety of person or property, which is equally culpable. Wallace v. Mayor, 2 Hilt., 440. Exemplary, vindictive or punitive damages can never be recovered in actions upon anything less than gross negligence. There are many reported cases of mere ordinary negligence, in which damages have been awarded by juries to so large an amount, as to seem equivalent to exemplary damages; but where such verdicts have been allowed to stand, it has been upon the ground, that the court could not clearly see that the amount awarded was more than a just compensation for the injury. It is often said, that exemplary damages may be awarded for gross negligence. But it appears to us that the real meaning of the court, in these cases, was, that such dam-

ages may be awarded where the negligence is so gross as to raise a presumption, that the person in fault, is conscious of the probable consequences of his carelessness, and is indifferent, or worse, to the danger of injury to the persons, or property of others. It is only in cases of such recklessness, that, in our opinion, exemplary damages should be allowed. Sher. & Red., § 600.

The line of demarcation has not, in every instance, been clearly maintained between the several rules in these cases. Judges have, in some instances, apparently disregarded recognized distinctions to some extent, and have referred rather indefinitely to damages as punitive, when they were properly compensatory only. The case of the S. R. R. Co. v. Kendrix, 40 Miss., 375, may be cited as one, in which, to the careless reader, the characteristics of the two classes of cases mentioned are partially blended, and the injuries which may be rightfully considered as proper subjects of compensation, are classed as punitive in their character. Examined with these suggestions in view, the case cannot be considered as exceptional, but in perfect accord with the current of adjudications on the subject.

Upon this branch of the case, the inquiry here naturally arises, what are proper subjects of compensation, in cases of injuries to the person, when merely compensatory damages can be allowed? We answer: The jury in estimating the damages, may take into consideration the loss of time and pecuniary expense consequent thereupon, and also the bodily pain, or any incurable hurt. Pierce, 495; Sedg.; Sherman & R., 10 Barb., 20 ib.

In an action for negligent injury to the person of the plaintiff, he may recover the expenses of his cure; the value of the time lost by him during the cure, and a fair compensation for the physical and mental suffering caused by the injury, as well as for any permanent reduction of his power to earn money. Sher. & Red., § 606.

The jury may estimate future damages in the way of loss of health, and of time, disability of limbs so as to prevent

a party from pursuing his usual employment; (bodily pain and suffering, which are proved as reasonably certain to result from the original injury). Also, mental suffering may be taken into consideration, where actual injury to the person has been sustained. Ib.

In Morse v. Auburn & S. R. R. Co., 10 Barb., 621, the *nisi prius* judge spoke of the damages so far as they might be enhanced by taking the pain and suffering of the plaintiff into the account, as exemplary in their character; but the supreme court held that, " the physical pain and suffering ought to be taken into the account in estimating the damages in every action to recover for a personal injury occasioned by negligence, irrespective of any question of motive." The defendant's counsel in that case, insisted that all damages recovered beyond the actual loss of time, and pecuniary expense, were strictly exemplary, and that to authorize a plaintiff to recover damages of that character, he must show the injury to have been willful and malicious; but the supreme court held that, " damages for bodily pain and suffering arising from physical injury, and connected with actual loss of time and money, are not exemplary, or punitive in character, in any strict or proper sense of those terms."

In Curtiss v. the Rochester & S. R. R. Co., 20 Barb. S. C., 282, the court say that, " in ascertaining the amount of plaintiff's damages, it would be proper for the jury to consider the bodily pain and suffering which had occurred in consequence of the injury; but that they could not act upon conjecture" as to the prospective condition or situation of plaintiff; they could only regard in respect to the future, what the evidence rendered reasonably certain, would necessarily and inevitably result from the original injury. * * Such a consequence, which was necessarily and directly to flow from the injury, was as much a part of it as the continuance of a physical disability which the injury occasioned. It was certainly proper for the jury, in estimating the damages to the plaintiff, to regard the effect of the injury in future upon her health; the use of her limbs, her abilty to labor

and attend to her affairs, and generally to pursue the course of life she otherwise might have done,· and I do not perceive why," says the learned judge, who delivered the opinion of the court, "it was not equally proper for them to consider its effects in producing bodily pain and suffering."

The court further said, that the plaintiff was entitled "to recover damages for both past and future pain of body, as well as for past and future deprivation of health, or of any of her bodily powers. In respect to all the subjects of damage, it was requisite that they should be the legal, direct and necessary results of the injury, and that those which at the time of the trial were prospective, should not be conjectural. It was also requisite that they should be supported by such clear and certain evidence as ought to produce conviction in fair minds. All such results, in the aggregate, constituted the injury. There is nothing speculative or contingent, in a legal view, in regard to such damages. * * * They were general damages, implied by law, as much as a continued disability consequent upon a broken limb. The amount was to be controlled by the evidence disclosing the circumstances of the case, as similar damages must be in all such cases." This case has been since approved in court of appeals. 18 N. Y., 534; vide, also, Sher. & Red., 648, § 597; 2 Red., 220.

The supreme court, in Morse v. Auburn and Syracuse Railroad Co., 10 Barb., 621, observe: "Exemplary or punitory damages, or 'smart money,' as they are often called, are given by way of punishment, for intentional wrong, and to operate as an example to others. The law, in such cases, looks beyond the act and its injurious consequences, to the motive, and metes out its punishments to that also. In such cases, the compensation for the actual pecuniary damage is rather subsidiary and incidental. There, the mental suffering, the injured feelings, the sense of injustice, of wrong, or insult, on the part of the sufferer, enter largely into the account, and the measure of justice is graduated by that of the offender's turpitude." In that case, the defendants' counsel had

requested the judge at *nisi prius*, to charge the jury, that to justify a verdict for exemplary damages, they must find the defendants had acted wantonly, or maliciously, or had been guilty of negligence to such a degree as to be equivalent to malice. The judge refused so to charge, and in this the supreme court say " he is correct."

On suits for merely vindictive damages, the jury are governed by no rule; but where a rule can be discovered; the jury are bound to follow it. Walker v. Smith, 1 W. C. C., 152. Vindictive damages can only be given where the defendant has acted with an evil intention or bad motive. McCall v. McDowell, 1 Pac. Law Mag., 360. In Hall v. Conn. River Steamboat Co., 13 Conn., 319, the plaintiff, a passenger in a steamboat, in an action against the owners for damages, having proved the injury to himself, through the negilence of the master and crew, offered further evidence to show that while sitting upon the wharf, immediately after the injury, he applied to the master for some of his men to assist him into a carriage, who refused, saying, he had enough for his men to do on board. Held, that such evidence was admissible.

In the case at bar, the conductor had no apologies for stopping where he did, nor suggestions or offers of aid to his passenger when alighting, nor, when in pain, had he even a parting word of regret, that he must leave him in distress in the snow and mud. The record, if the facts are told, exhibits a disregard of those attentions, which the circumstances demanded, and which the jury would be at liberty to characterize as heartless and outrageous, or exceptionaal and excusable.

Our conclusions upon this branch of the case are, that the sixth charge given for plaintiff, is not only too broad, but is wanting in several particulars; while the fourth, for defendant, refused, is too restricted. The two are but the extremes of the questions they were intended to present. The one breaks down the dividing line between compensatory and punitive damages, and virtually submits to the jury both the law and facts. The other, as a rule to guide a jury, would be only a partial statement of the basis of exemplary damages.

We are of the opinion that the fourth charge asked by defend-
ants, was properly refused, but that the court erred in giving
the sixth for plaintiff. In lieu of that instruction, it was the
duty of the court to have informed the jury of the right of
the plaintiff, first, to compensatory damages, and of the sub-
jects of compensation, proper for them to consider in fixing
the amount of their verdict; and secondly, the basis of ex-
emplary damages, stating clearly the elements which should
be proved to the satisfaction of the jury, to authorize them
to go beyond the rule of compensation.

Where circumstances of aggravation are proved, the jury
are the necessary, as well as the rightful judges of the
amount of relief, but when no such facts are presented, too
much care cannot be taken to apply settled rules to the sub-
ject of compensation. Sedgwick, 545.

In Heil v. Glanding, 42 Penn., § 493, the *nisi prius* judge
instructed the jury, "that if they found for the plaintiff, the
measure of damages would be as to the horse, his value, with
interest; but as it is no certain rule by which to estimate the
damages for the personal injury to the plaintiff, they would
fix them at such sum as they should think right and proper
under the evidence. Held that the instruction should have
been more precise; and the court say: "It is true, as the
learned judge said, there is no certain rule by which to esti-
mate the damages for an injury to the person, but there are
guides."

Pa. R. R. Co. v. Vanderver, 36 Penn., 298, and Pa. R. R. Co.
v. Kelly, 31 Penn., 372, were cases of compensatory damages
merely. Instructions submitting the questions of damages,
without restriction, to the jury, were condemned on error,
and it was declared to be " the duty of the court to give
definite instructions to the jury as to the true measure of
damages."

The right to damages is a question of law for the court.
The facts are for the jury. The 6th instruction under con-
sideration, is not merely too broad, but in effect it submits
the whole case, law and fact, to the jury. The court com-

mitted a serious error in not explaining some of the "guides" in this class of cases, in aid of the judgment of the jury. See 2 Red., 320; Sedgwick, 36, 112, 664–5.   Sher. & Red., 646–648; 18 Ill., 416; Curtiss v. R. & S. R. R. Co.; 18 N. Y., 534; Pierce, 254, 493–4–5, and case cited in notes; 2 Parsons on Con., 451.

Observing more definitely as to the amount awarded the plaintiff by the jury in this case, we repeat, that the record does not disclose whether the verdict was intended to be compensatory only, or punitory in its character.

If the jury considered the damages awarded by them as exemplary, they were not without evidence upon which to base their finding.   Having stopped the train at an unusual place, and the ground being treacherous from snow and mud the conductor was under special obligations to extemporise a means of exit to his passenger, or at least to render such services and attentions as would render his exit safe.   So far from exhibiting the courtesies due from one in his position, he appears to have been stolidly indifferent, alike to the safety and comfort of the plaintiff while alighting from the car, and to his sufferings after the accident.   If, therefore, the jury intended the damages awarded by them as vindictive, they were not without grounds for their verdict. If the jury construed the conduct of the conductor as a willful disregard of a public duty, and a heartless indifference to the safety and comfort of one under his care, their judgment can hardly be impugned.

But if the damages were considered compensatory only, they cannot be regarded as excessive, either in view of the facts, or when compared with the very numerous cases of this character.   The accident occurred in January, 1869.   A jury in October of the same year, rendered a verdict of $2,000 for plaintiff, and another in August, 1870, awarded the plaintiff $4,500.   Upon a similar state of facts, some verdicts have been less, but many much more than this. Few of us, we apprehend, even of those who have passed the meridian of life, would be willing to take a permanently

crippled limb with twice or thrice $4,500. In Curtiss v. R. & S. R. R. Co., 20 Barb., 282, the cars ran off the track, whereby the plaintiff was seriously, if not permanently injured, but there was no proof of gross negligence, and the defendant's counsel contended that the recovery should be only the actual pecuniary loss to plaintiff. The jury awarded $4,500 damages, as to which the court say : " There was evidence showing that the plaintiff had been most of the time since the injury, incapacitated by it from labor; and there was also evidence tending to prove that the disability would be permanent, or at least, long continued. I cannot say, in view of this evidence," says Mr. Justice Strong, who delivered the opinion of the court, " that the sum is too great, much less that the damages are so excessive as to indicate partiality, prejudice, passion, or anything improper in the jury."

In the case at bar, the plaintiff was for several months under the care of a physician, who testified that he was permanently disabled. The issue has been twice determined, the verdict of the second jury exceeding that of the first by $2,500. Independently of our reliance upon the jury, we are not prepared to say, that our own judgment does not approve the finding in this case. The average of awards in this class of cases, is above rather than below the sum allowed in this instance. Indeed, $4,500 can scarcely be said to be adequate compensation for several months of suffering, physician's charges, other expenses, loss of time, and a crippled limb for life. *Vide*, 2 Red., 220, and several cases cited.

Ought this case to be sent back for a new trial? Our predecessors in Cameron v. Watson et al., 40 Miss., 191, refused to grant a new trial where " the verdict was correct, notwithstanding the erroneous instruction." And the court say : " In such a case, the error in the instruction is not ground for granting a new trial where it is manifest that the verdict was correct, upon the facts appearing in the record."

So in Fore v. Williams, 35 Miss., 533, instructions submit-

ting both the law of the case and the facts to the jury, being assigned for error, the court say: "This was obviously irregular and improper; but it appears the jury came to a correct conclusion upon the subject; and as the error in the court did not operate to the defendant's prejudice in law, it was no ground for setting aside the verdict and granting a new trial." *Vide*, also, N. O., J. & G. N. R. R. Co. v. Statham, 42 Miss., 607, Sedg., 713, 714; 2 Parsons, 451, 452.

Mr. Justice Story, in Thurston v. Martin, 5 Mason, 197, says: "It is one thing for a court to administer its own measure of damages, in a case properly before it, and quite another thing to set aside the verdict of a jury, merely because it exceeds that measure. The court in setting aside a verdict for excessive damages, should clearly see that they are excessive; that there has been a gross error, that there has been a mistake of the principles upon which the damages have been estimated, or some improper motives, or feelings or bias, which have influenced the jury.     *     *     *     *
Upon a mere matter of damages, where different minds might, and probably would arrive at different results, and nothing inconsistent with an honest exercise of judgment appears, I, for one, should be disposed to leave the verdict as the jury found it."

This record is wanting in some information we should be glad to have before us, such as the age, occupation or profession of plaintiff; more exact information as to the injury and its effects upon the ability of plaintiff to labor, and further developments as to the conduct of the defendants servants, and the causes of the neglect to stop at the Chewalla platform. But there is sufficient in the record to enable us to compare this with other like cases, as we have done with a great number, with the conclusion that this case is by no means exceptional. The verdict appears to be not only by comparison, but as far as we can exercise our own judgment, fairly compensatory only. According to the jury, an honest exercise of judgment; unable to discover any mistake of the principles upon which the dama-

ges have been estimated; not prepared to say that the damages are excessive in any point of view; certainly no gross error appears, or has been pointed out to us; indeed not prepared to say from the evidence, that the sum is too great even, observing no evidence of partiality, prejudice, passion, or any improper motives or feelings, or bias on the part of the jury, we see no reason in the damages awarded, why the judgment should be reversed.

Having reached the conclusion that the verdict of the jury is substantially just, it devolves upon us in accordance with the rulings of our predecessors and of the practice in other states, to affirm the judgment, notwithstanding the erroneous instruction, which we have discussed, and the failure of the circuit judge to afford the jury such other and further "guides" as they were entitled to in aid of their deliberations. 40 Miss., 101; 35 ib., 533; 42 ib., 607; 23 Ill., 498; 2 Parsons, 451, 452; Sedg., 713.

The judgment is affirmed.

A petition for a re-argument was filed and refused.